STATE of Indiana, ex rel. Donna M. HIRT, Relator,

v.

The MARION SUPERIOR COURT and the Honorable B. William Keithley, as Special Judge Thereof, Respondents.

No. 483S142.

Supreme Court of Indiana.

July 22, 1983.

Max L. McCausland, Timothy O'Connor, Indianapolis, for relator.

Robert P. Thomas, Deputy Pros. Atty., Indianapolis, for respondents.

GIVAN, Chief Justice.

Relator Donna M. Hirt petitioned this Court for a Writ of Mandamus and Prohibition to compel the Respondent to dismiss a petition entitled "In the Matter of Donna Marie Parks [Hirt]." Relator also sought to have this Court order the Respondent to refrain from attempting to exercise jurisdiction over her in any way, insofar as such an attempt was based on her alleged operation of a motor vehicle in Marion County on June 7, 1980. We heard argument on the petition on February 23, 1983, and subsequently denied the petition. We hereby ratify the denial of the petition for a writ.

The record shows Relator was arrested shortly after midnight on June 7, 1980, when a police officer found her outside her car in an allegedly intoxicated state at the intersection of 21st Street and Drexel Avenue in Indianapolis. The officer found one Marie Compton had been riding a Moped motorbike through that intersection when Relator struck Ms. Compton. Ms. Compton subsequently died from her injuries.

On June 23, 1980, the Marion County prosecutor filed a criminal information in the Marion County Superior Court, Criminal Division, charging Relator as defendant with violation of I.C. § 9–4–1–54 [Burns 1982 Supp.], Driving While Intoxicated and Causing the Death of Another. Subsequently it was discovered Relator was a juvenile at the time of the accident. On August 27, 1980, the record shows the court found it had no jurisdiction in the matter. The cause was ordered transferred to the Juvenile Division of the Respondent court.

The next procedural move in the case was on November 17, 1981, when the Marion County prosecutor filed a petition in the Respondent court entitled "In the Matter of Donna Parks [Hirt]." The record shows the filing of this petition by the prosecutor was for the purpose requesting authorization to file a subsequent petition alleging Relator's delinquency. *See* I.C. § 31–6–4–9 [Burns 1980 Repl.]. The statute allegedly violated is identified in this petition as I.C. § 35–42–1–5 [Burns 1979 Repl.], Reckless Homicide.

On April 14, 1982, Relator filed a Motion to Dismiss the November 17 petition. It is this motion that is the subject matter of Relator's petition for a writ. This motion was premised on Ind.R.Cr.P. 4(C), which reads:

"(C) Defendant discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged."

Relator contends since the original "charge" in this case was the criminal information filed by the prosecutor in the Criminal Division of Marion Superior Court on June 23, 1980, and more than one year has elapsed since that time, she is entitled to an outright discharge.

The Respondent asserts Relator had no rights under CR 4(C) at the time the motion was filed. Its position is that the time limit of CR 4(C) does not begin to run until a charge has been properly filed, and that the filing of a criminal information charging a juvenile with an offense in a court with criminal jurisdiction is an absolute nullity by reason of the court's lack of jurisdiction over the juvenile. The Respondent asserts the proper filing of a charge against Relator did not occur until the petition alleging Relator's delinquency was filed in juvenile court on April 28, 1982. The Respondent points out Relator's motion was filed twelve days before this date and thus was totally premature.

The Respondent cites as principal authority for its position *State ex rel. Hunter v. Juvenile Court of Marion County,* (1974) 261 Ind. 624, 308 N.E.2d 695. In that case an affidavit was filed against the juvenile Relator charging him with murder on April 30, 1973. The Relator was held in custody. Subsequently the grand jury found him to be a juvenile, and on July 3, 1973, this information was sent to the Marion County prosecutor. On November 15, 1973, the Relator moved for release in the criminal court in which the criminal charge had been filed. The motion was premised on Ind.R. Cr.P. 4(A), requiring release of a defendant held in jail and not tried within six months after his arrest or the filing of a charge, whichever is later. The Relator sought a writ from this Court to compel the Respondent juvenile court to which the case had been transferred to release him.

We denied the petition for a writ. We held the six month period of CR 4(A) did not begin to run until January 4, 1974, when the prosecutor filed a petition alleging delinquency. We noted that under I.C. § 33–12–2–3 [Burns 1973] (repealed by Indiana Acts 1978, P.L. 136, § 57) the juvenile court of Marion County was invested with

original and exclusive jurisdiction over juveniles. The criminal affidavit of April 30, 1973, however, was filed in Municipal Court of Marion County, which at the time had no jurisdiction over juveniles. Therefore, we concluded, "[N]o valid charge was filed against Relator until January 4, 1974, at the time the petition for delinquency was filed in Juvenile Court." *State ex rel. Hunter, supra,* at 627, 308 N.E.2d at 696.

The key to the *State ex rel. Hunter* case is that a court invested with jurisdiction over a juvenile does not acquire such jurisdiction until a proper charge is filed in that court. *See* I.C. § 31–5–7–7 [Burns 1973] (repealed by Indiana Acts 1978, P.L. 136, § 57).

Relator asserts the *State ex rel. Hunter* case cannot be applied in the case at bar due to the reorganization of the Marion Superior Court as codified into law in I.C. § 33–5–35.1–1 *et seq.* [Burns 1982 Supp.]. Indiana Code § 33–5–35.1–1(a) states in part: "There is established a superior court in Marion County, Indiana consisting of fifteen [15] judges." Further, I.C. § 33–5–35.1–2 states: "The court shall be named and styled Marion Superior Court." Finally, I.C. § 33–5–35.1–4 states in part:

"(a) The court, within and for the county of Marion, has the following jurisdiction:

* * * * * *

(4) Original and exclusive juvenile jurisdiction."

Relator asserts under this statutory scheme there is no distinction between the various division of the Marion Superior Court. Thus, she argues, accepting that under *State ex rel. Hunter, supra,* the key act to invoking jurisdiction over the juvenile and tolling CR 4 is the filing of a charge in a court with juvenile jurisdiction, the filing of the criminal information in the Criminal Division of Marion Superior Court on June 23, 1980, was the act that tolled CR 4(C). This argument is premised on the rationale that the "Criminal Division of Marion Superior Court" is, despite its label, a court with original and exclusive juvenile jurisdiction.

An examination of the statute creating the Marion Superior Court and the rules of that court discloses that the petitioner is correct in his reading of the law in this regard. Without question, the statute creates a single superior court with each judge thereof having jurisdiction over all named cases including civil, criminal, probate and juvenile. There is no mention in the statute of separate divisions of that court. When one turns to the rules promulgated by the court itself, we get no help. Yet, it appears from the manner in which the court is actually run, that no attention is paid to the statute and that the courts are operated as separate entities much the same as they were prior to the enactment of the statute. However, due to the manner in which this case was handled, as herinafter described, we find it unnecessary to further wander through this never-never land of elusive jurisdiction.

The Respondent makes a twofold response to Relator's argument. First, it contends the fundamental holding of the *State ex rel. Hunter* case is that the time limits of CR 4 do not begin to run until a petition authorizing delinquency is filed. That date in this case is April 28, 1982. Second, the Respondent contends the filing of the information on June 23, 1980, in the Criminal Division was an absolute nullity because that court had no jurisdiction over Relator, a juvenile at the time of the alleged commission of the offense. Thus the Respondent contends no time limit of any kind could begin to run from that date since the filing was of no legal effect, for lack of jurisdiction over Relator. The record reflects the Criminal Division eventually determined this was the case. The entry of August 27, 1980, recites, "By agreement of parties and Court not having jurisdiction, cause ordered transferred to Juvenile Court."

We first consider the Respondent's argument that, notwithstanding our decision in *State ex rel. Hunter, supra,* the Criminal Division had no authority to entertain the June 23 filing of the information because of its lack of jurisdiction over Relator. It is

provided in the juvenile code, "A child may not be charged with or convicted of a crime, except a crime excluded by I.C. § 31–6–2–1(b) [Burns 1980 Repl.], unless he has been waived to a court having criminal jurisdiction." Indiana Code § 31–6–3–5(a) [Burns 1980 Repl.]. Turning to I.C. § 31–6–2–1(b) [Burns 1980 Repl.], effective in June of 1980, to see if the exception named there would apply in this case, we find: "This article [I.C. 31–6, *i.e.*, the entire juvenile code] does not apply to a child who at the time of the alleged violation was sixteen [16] years of age or older and who allegedly committed a violation of: (1) any traffic law . . . ." The June 23 information filed in the Criminal Division recites the statute violated by Relator is "IC 9–4–1–54." Seeing that I.C. § 9–4–1–54 [Burns 1982 Supp.] is a part of the Uniform Act Regulating Traffic on Highways, we think it is apparent the State's filing on June 23, 1980, was a filing charging "a child who at the time of the alleged violation was sixteen [16] years of age or older [with violation of a] traffic law."

Thus, in this case, contrary to the belief of the Criminal Division and also the Respondent's position that the June 23 filing was a nullity because of a lack of jurisdiction over Relator, that filing could have formed the basis for a prosecution of Relator without a valid waiver from juvenile court being entered before the filing in the Criminal Division. The one year time limit of CR 4(C) thus would have begun to run as of June 23, 1980, had the State followed through with the prosecution of her in that court.

We note I.C. § 31–6–2–1(b) has since been amended so as to exclude from coverage therein charges of violation of I.C. § 9–4–1–54 by juveniles over sixteen. *See* Indiana Acts 1981, P.L. 266, § 1. Thus at the present time the filing of an information alleging violation of I.C. § 9–4–1–54 by a child between sixteen and eighteen in a court with criminal jurisdiction without a valid waiver from a court with juvenile jurisdiction would be of no effect. But such was not the case in June of 1980 when the information charging Relator as defend-

ant was filed in Criminal Division of Marion Superior Court.

The fact the State is in error in its position that the filing of June 23 was a nullity does not resolve the question however. We believe the relevant question becomes, what is the effect of the August 27, 1980, order transferring the cause to the Juvenile Division? The record indicates nothing occurred with regard to this case until almost fifteen months later, when on November 15, 1981, the Marion County Prosecutor asked the Juvenile Division for authorization to file a petition alleging delinquency. This authorization was given on April 28, 1982, and the petition alleging delinquency was filed that same day.

■ First, we believe the effect of the August 27, 1980, transfer of the case to the Juvenile Division was to leave nothing pending in the case, thus, at that point, Relator was not in jeopardy and CR 4 was not in force. Indiana Code § 31–6–2–2(a) [Burns 1980 Repl.] reads as follows:

"Except as provided in section 1.5(a) [I.C. 31–6–2–1.5(a)] of this chapter, if a court having criminal jurisdiction determines that a defendant is alleged to have committed a crime before his eighteenth birthday, it shall immediately transfer the case, together with certified copies of all papers, documents, and testimony, to the juvenile court. The juvenile court shall proceed as if it had received a referral under IC 31–6–4–7."

Indiana Code § 31–6–2–1.5(a) [Burns 1980 Repl.] does not apply in this case. It is apparent the Criminal Division's transfer of August 27, 1980, to the juvenile court was made with this statute in mind. Considering the statute's direction that after transfer the juvenile court is to proceed as if it had received a referral under I.C. § 31–6–4–7 [Burns 1980 Repl.] and looking to the record from that point on, it is also apparent the Respondent proceeded with I.C. § 31–6–4–7 in mind.

Indiana Code § 31–6–4–7 provides:

"(a) Any person may give an intake officer written information indicating

that a child is a delinquent child. If the intake officer has reason to believe the child has committed a delinquent act, he shall make a preliminary inquiry to determine whether the interests of the public or of the child require further action.

(b) A preliminary inquiry is an informal investigation into the facts and circumstances reported to the court. Whenever practicable, it should include information on the child's background, current status, and school performance.

(c) If a parent, guardian, or custodian of a child seeks information concerning a preliminary inquiry, he shall be notified whether a preliminary inquiry is being made and, if so, the nature of the inquiry.

(d) In the event of a child interview, the intake officer shall advise the child and his parent, guardian, or custodian:

(1) Of the nature of the allegations against the child;

(2) That he is conducting a preliminary inquiry to assist in determining whether a petition should be filed alleging that the child is a delinquent child;

(3) That he will recommend whether to file a petition, informally adjust the case, refer the child to another agency, or dismiss the case; and

(4) That the child has a right to remain silent, that anything he says may be used against him in subsequent judicial proceedings, that the child has a right to consult with an attorney before he talks with the intake officer and that the child has a right to stop at any time and consult with an attorney and to stop talking with the intake officer at any time, and that if the child cannot afford an attorney, the court will appoint one for him.

(e) The intake officer shall send the prosecutor a copy of the preliminary inquiry in all cases involving allegations that the child committed an act that would be a crime if committed by an adult. The intake officer shall send to the prosecutor or the attorney for the county department a copy of the preliminary inquiry in all cases involving allegations that the child committed a delin-

quent act that would not be a crime if committed by an adult. He shall recommend whether to file a petition, informally adjust the case, refer the child to another agency, or dismiss the case. This referral procedure may be altered by agreement of the prosecutor and the court.

(f) The person who represents the interest of the state and who receives the preliminary inquiry and recommendations shall decide whether to request authorization to file a petition. This decision is final only as to the office of the person making it."

Upon initiation of the procedure set forth above, after a court with criminal jurisdiction has, pursuant to I.C. § 31–6–2–2(a) transferred a case to the juvenile court, the child has not yet been placed under a charge. I.C. § 31–6–4–7(b) indicates the preliminary inquiry required to be made upon transfer of the case is an "informal investigation into the facts and circumstances reported to the court." Moreover, I.C. § 31–6–4–7(e) indicates the investigating intake officer is empowered to "recommend whether to file a petition, informally adjust the case, refer the child to another agency, or dismiss the case." The status of the case at this point is thus nothing more than investigatory. It would run counter to the statute to hold this is the point of the filing of a charge.

Finally, we look to two other sections of the juvenile code and find them supportive of the conclusion the time limit of CR 4(C) starts to run when the petition alleging delinquency is filed and not sooner. I.C. § 31–6–7–1 [Burns 1980 Repl.] provides:

"(a) In cases in which a child is alleged to be a delinquent child, the procedures governing criminal trials apply in all matters not covered by this article.

(b) In cases in which a person is charged with a crime, the laws governing criminal trials apply.

(c) In other cases, the Indiana Rules of Trial Procedure apply in all matters not covered by this article."

Looking particularly to subsection (a) of the statute quoted above, the conclusion to be drawn therefrom is that the intent of the legislature was to have the procedures applicable in criminal proceedings, either as promulgated by the legislature or by this court, become effective when the "child is alleged to be a delinquent child" and not sooner.

Under I.C. § 31-6-7-6(e) we find: "A child may not be required to answer a petition alleging that he is a delinquent child for more than one year in the aggregate." The effect of this subsection of the statute is to suggest the one year time limit of CR 4(C) begins to run at the time of the filing of the petition alleging delinquency and not sooner.

Thus, notwithstanding the incorrectness of the *State's* position that the time limit of CR 4(C) could not begin to run on June 23, 1980, for the lack of jurisdiction of the court, the present statutory scheme supports the holding of *State ex rel. Hunter, supra.* That holding is that the time limit of CR 4(C) begins to run at the time the petition alleging delinquency is filed in a court with juvenile jurisdiction. In this case that filing occurred on April 28, 1982. Thus, Relators CR 4(C) rights, and her equivalent rights under I.C. § 31-6-7-6(e), attached at that time.

The denial of Relator's petition for a writ is hereby ratified.

All Justices concur.

### ORDER

GIVAN, Chief Justice.

Being duly advised in the premises, this Court now finds:

1. That Relator was represented in the above captioned cause in this Court by Attorney Max L. McCausland;

2. That Attorney McCausland filed his "Motion for Leave to Withdraw his Appearance" in this cause on May 4, 1983, said motion being in the following words and figures, to-wit:

(H.I.)

3. That by order of this Court, Attorney McCausland's Motion for Leave to Withdraw was granted by the Court on June 8, 1983;

4. That Relator is now represented in this cause of action in the trial court by Attorney Timothy O'Connor, 156 E. Market Street, Indianapolis, IN. 46204.

5. That on the 22nd day of July, 1983, the written opinion of this Court ratifying the denial of Relator's Petition for Writ of Mandamus and Prohibition is filed with the Clerk of this Court.

Accordingly, the Clerk is ordered to send a copy of the written opinion of this Court denying Relator's Petition for Writ of Mandamus and Prohibition to Attorney Timothy O'Connor, 156 E. Market Street, Indianapolis, IN. 46204.