Nickie L. TWYMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 284S48 (2–183A3).

Supreme Court of Indiana.

Feb. 10, 1984.

Rehearing Denied April 19, 1984.

Susan K. Carpenter, Public Defender of Indiana, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

## PETITION TO TRANSFER

GIVAN, Chief Justice.

In this case we undertake to explain the interrelationship between the "original exclusive jurisdiction" granted juvenile courts, and criminal court jurisdiction, over juveniles who have committed criminal acts. (For reference, *see State ex rel. Hirt v. Marion Superior Court*, (1983) Ind., 451 N.E.2d 308.) In doing so, we grant the "Petition for Criminal Transfer" and vacate the Court of Appeals decision reported at 452 N.E.2d 434.

We adopt the following portions of the Court of Appeals opinion:

"Nickie L. Twyman appeals from the denial of his petition for post-conviction relief under Indiana Rules of Procedure, Post-Conviction Rule 1.

\*   \*   \*   \*   \*   \*

"In May of 1974, Nickie L. Twyman was arrested on a charge of robbery. An information was filed on May 15th charging William Twyman with the robbery. Nickie Twyman was in fact the person arrested on this charge. William is Nickie's brother who was then twenty years old. At the time, Nickie was three months short of seventeen. Nickie Twyman appeared in the Criminal Court of Marion County, Division Two, and pleaded not guilty. At no time did he reveal either his true age or identity to the court although he testified he told his lawyer. Later, pursuant to a plea agreement, the charge was reduced to assault and battery with intent to commit a felony, and Nickie pleaded guilty on July 24, 1974, receiving an indeterminate sentence of one to ten years. At the guilty plea hearing, Nickie twice told the court he was twenty years old. At his sentencing hearing on July 29, 1974, Nickie stated, in response to the court's question, that he knew of no reason why the court should not enter sentence on his guilty plea. Nickie's identity as the person who committed the offense clearly was established at the guilty plea hearing by the testimony of the victim and the arresting officers. Nickie served the sentence imposed.

"In 1978, and again in 1980, Nickie was convicted of burglary. In the 1980 charge, an additional count charging him with being an habitual offender was added and his sentence was enhanced by thirty years for a total sentence of forty years. The 1974 conviction is one of the underlying felonies supporting the habitual offender charge. He appealed the habitual offender determination challenging only the sufficiency of the evidence of identification of him as the same person as the William Twyman whose prior convictions were the basis for the habitual offender adjudication. Our supreme court affirmed. *Twyman v. State*, (1982) Ind., 431 N.E.2d 778.

"Twyman then filed this petition for post-conviction relief on June 23, 1982, asserting for the first time his juvenile status in 1974, and attacking the 1974 conviction on the ground the court lacked jurisdiction to accept his guilty plea and

to enter sentence. The state answered that Twyman's claim for post-conviction relief was barred by the failure to assert his claim from July 29, 1974, to the filing of the petition in June of 1982.

"Following a hearing on the petition, the trial court entered its findings of fact and conclusions of law denying post-conviction relief on the ground that '[t]he issue raised by the Petitioner has been waived for purposes of Post-Conviction Relief under the doctrine of laches because the issue has been available to Petitioner since July 29, 1974.' Record at 70.

\* \* \* \* \* \*

"Twyman argues that because of his juvenile status and lack of a waiver from juvenile court in July 1974, the Criminal Court of Marion County lacked subject matter jurisdiction to accept his guilty plea and to enter sentence. Thus he contends his 1974 conviction is void and cannot form the basis for his enhanced sentence as an habitual offender." 452 N.E.2d 434, 435–36. (Footnotes omitted.)

■ The State contends the trial court did have subject matter jurisdiction to accept appellant's guilty plea, although the court lacked jurisdiction over his person.

"Jurisdiction is the legal power to entertain any matter or proceeding, and the power to act must be derived from the Constitution or from some statute. *Farley v. Farley*, (1973) 157 Ind.App. 385, 300 N.E.2d 375, *trans. denied* (1974). Jurisdiction, in this state, embraces three essential elements: (1) jurisdiction of the subject matter, (2) jurisdiction of the person, and (3) jurisdiction of the particular case. *State ex rel. Dean v. Tipton Circuit Court*, (1962) 242 Ind. 642, 181 N.E.2d 230; *State ex rel. Gilbert v. Circuit Court of Koscuisko County*, (1960) 241 Ind. 122, 170 N.E.2d 51; *Farley [supra]*. Subject matter jurisdiction concerns whether or not the particular court has jurisdiction over the general class of actions to which the particular case belongs. *Pund v. Pund*, (1976) 171 Ind. App. 347, 357 N.E.2d 257; *Brendanwood*

*Neighborhood Association, Inc. v. Common Council*, (1975) 167 Ind.App. 253, 338 N.E.2d 695, *trans. denied* (1976). Subject matter jurisdiction must be derived from the Constitution or a statute and cannot be conferred by the consent or agreement of the parties. *Carpenter v. State*, (1977) 266 Ind. 98, 360 N.E.2d 839; *City of Marion v. Antrobus*, (1983) Ind.App., 448 N.E.2d 325. Neither can an objection to subject matter jurisdiction be waived. *Carpenter [supra]*; *Shanholt v. State*, (1983) Ind.App., 448 N.E.2d 308 (transfer pending).

\* \* \* \* \* \*

"Jurisdiction of the person refers to the particular parties who are brought before the court, and the right of that particular court to exercise jurisdiction over those parties. *Farley [supra]*. Objections to jurisdiction of the person may be waived by failure to assert them in a timely manner. *Vogelgesang v. Metropolitan Board of Zoning Appeals*, (1973) 157 Ind.App. 300, 300 N.E.2d 101, *trans. denied* (1974); Ind.Rules of Procedure, Trial Rule 12(H).

"Having made these general observations concerning jurisdiction and its elements, we turn now to a determination of whether or not the criminal court, where there had been no waiver from the juvenile court, lacked subject matter jurisdiction in the 1974 charge against Twyman. Or, if there was a jurisdictional defect, was it merely lack of jurisdiction of the person . . . ." 452 N.E.2d at 436.

Juvenile jurisdiction is admittedly a confused area of the law in which cases seemingly support both parties' positions. The vagaries of juvenile jurisdiction have been caused by the use of imprecise language and loose terminology in appellate opinions, and in the jurisdictional statutes as well.

The pertinent jurisdictional statutes in effect at the time appellant was charged in 1974 are:

"33–12–2–3 [9–3103]. Original exclusive jurisdiction.—The juvenile courts created by this act [33–12–2–1—33–12–2–

28] shall have *original exclusive jurisdiction,* except after jurisdiction of the child is waived in *all cases in which a child is alleged to be delinquent,* dependent or neglected, including the alleged delinquency, dependency or neglect of a child of divorced parents. The juvenile court shall also have exclusive original jurisdiction to determine the paternity of any child born out of wedlock, and to provide for the support and disposition of such child and in all other cases that may hereafter be conferred by law. [Acts 1945, ch. 347, § 3, p. 1647; 1947, ch. 354, § 1, p. 1427; 1969, ch. 223, § 1, p. 848.]" (Emphasis added.) [Repealed by Acts 1978, P.L. 136, § 57.] (For current version, *see* IC § 31–6–2–1 [Burns Supp.1983]).

"A delinquent child was defined, *inter alia,* as a child under eighteen years of age who had committed an act which would be a crime not punishable by death or life imprisonment if committed by an adult. Ind.Code § 31–5–7–4 (Burns' Code Ed.1973, since repealed)." 452 N.E.2d at 437.

The Marion Criminal Court jurisdiction was defined at the time:

"33–9–1–4 [4–5704]. Jurisdiction.— Such criminal court shall have *original exclusive jurisdiction* within the county, of *all crimes* and misdemeanors, except where jurisdiction is by law conferred on justices of the peace, and such appellate jurisdiction in criminal cases as may, by law, belong to the circuit court in the counties having no criminal court. [Acts 1881 (Spec. Sess.), ch. 34, § 4, p. 111.]"

▬ Although the legislature vested both the juvenile court and the criminal court with "original exclusive jurisdiction," it is not difficult to imagine instances in which both would have subject matter jurisdiction over a given case. When a juvenile commits acts which would constitute a crime if he were an adult, he commits an act of delinquency, but he has also committed the elements of a crime. The age of the offender is determinative of subject matter jurisdiction in the juvenile court,

however, it is merely a restriction on the personal jurisdiction possessed by a criminal court.

Thus, if a non-juvenile stands before the juvenile court misrepresenting his age, and is found to be a delinquent child, such determination could be set aside based upon a lack of subject matter jurisdiction. This result occurs because the age of the offender is an essential element of the subject matter jurisdiction conferred upon the juvenile court. Any decision of the court in a delinquency action wherein the offender was over eighteen years of age would be void for lack of subject matter jurisdiction.

▬ However, in a situation where an accused under the age of eighteen misrepresents his age to a criminal court, that court may accept a guilty plea assuming it has no knowledge of the misrepresentation. Such was the situation in the case at bar. Thus, the judgment of the trial court will not be reversed for lack of subject matter jurisdiction. It may be voidable for lack of personal jurisdiction, if the appellant has made a timely challenge to the court's having personal jurisdiction over him. The statute establishing criminal court jurisdiction, IC § 33–9–1–4, does not include the age of the offender as being a factor in its exercise of subject matter jurisdiction, hence the result is different.

The only restriction concerning age applying to a criminal court's jurisdiction reads as follows:

"31–6–2–2. Transfer of jurisdiction from criminal to juvenile court—Release or detention pending proceedings.—(a) Except as provided in section 1.5(a) [31–6–2–1.5(a)] of this chapter, *if a court having criminal jurisdiction determines that a defendant is alleged to have committed a crime before his eighteenth birthday* it shall immediately transfer the case, together with certified copies of all papers, documents, and testimony, to the juvenile court. The juvenile court shall proceed as if it had received a referral under IC 31–6–4–7.

\*  \*  \*  \*  \*  \*

"[IC 31–6–2–2, as added by Acts 1978, P.L. 136, § 1; 1979, P.L. 276, § 4.]" (Emphasis added.)

In the case at bar, the criminal court judge interrogated appellant as to his age and, based on appellant's misrepresentations, determined IC § 31–6–2–2 was inapplicable.

"[T]he Criminal Court of Marion County had subject matter jurisdiction both of robbery, the offense originally charged, and assault and battery with intent to commit a felony, the offense to which Twyman pleaded guilty and for which he was sentenced. That court may not have had jurisdiction of the person over Twyman ... because of Twyman's juvenile status, but under the particular circumstances of this case and for reasons hereinafter stated, we believe any objection to the lack of ... personal jurisdiction ... has been waived.

"Our next inquiry concerns the effect of Twyman's deliberate misrepresentation to the court that he was twenty years old. The only Indiana case which we have found dealing with misrepresentation of age is *Cummings v. State*, (1969), 252 Ind. 701, 251 N.E.2d 663. In *Cummings*, the appellant was sixteen. As our supreme court observed, '[t]he only claim that appellant was over eighteen years old was made by appellant herself to the probation officer and during [sic] trial when she represented herself to be twenty years old.' 252 Ind. at 703–04, 251 N.E.2d 663. The trial court did not conduct any hearing as to her age. The court said further: 'Since the appellant was under eighteen years of age and was not charged with a traffic or a capital offense, *she was not within the jurisdiction of the circuit court* ...[.]' (Emphasis added) 252 Ind. at 704, 251 N.E.2d [at 666]. 'Since the circuit court did not have *jurisdiction of appellant* in this case the said trial court is ordered to grant appellant's belated motion for a new trial and to *transfer this cause* to the Juvenile Court...[.]' (Emphasis added) 252 Ind. at 707, 251 N.E.2d

[at 667]." 452 N.E.2d at 438. (Footnotes omitted.)

This Court held in *Cummings* that a criminal court lacks jurisdiction to accept a guilty plea from a juvenile where the juvenile objects to the court's jurisdiction. We said if a juvenile challenges a court's jurisdiction, the trial court will then be required to hold a hearing to determine the defendant's age, and if the defendant is indeed a juvenile, it is incumbent upon the court to transfer the case to the juvenile court. The jurisdiction referred to in *Cummings* is personal jurisdiction. The situation in *Cummings* is paralleled in *Caldwell v. State*, (1983) Ind., 453 N.E.2d 278, 279:

"Defendant was less than sixteen at the time that he committed the instant offense, Murder. Consequently, he was not subject to treatment as an adult under Ind.Code § 31–6–2–1(d). Absent a proper waiver from the juvenile court under Ind.Code § 31–6–2–4, the trial court, an adult criminal court, had no jurisdiction of *him*. The record discloses no motion for waiver made by the Prosecutor and that *Defendant raised the absence of jurisdiction over his person in a timely manner*. The trial court erred in denying the motion to dismiss, or alternatively, in not granting the motion and referring the case to the juvenile court. *See Cummings v. State*, (1969) 252 Ind. 701, 707, 251 N.E.2d 663, 667." (Our emphasis.)

In the case at bar, appellant failed to appeal raising the personal jurisdictional issue, and now eight years later is basing his post-conviction relief petition on the same issue which was available to him at the time of his trial. The defendant in *Cummings* challenged the personal jurisdiction of the criminal court within three days of her conviction, in a criminal proceeding (not a civil proceeding for post-conviction relief), and petitioned the court to transfer the case to the juvenile court within a time period in which the trial court could have taken action to return the case for disposition within the juvenile system. The remedy that Cummings received is un-

available to appellant at this late date. We cannot send the case back to the juvenile court to have the case reheard and adjudicated in the same manner in which we were able to do in *Cummings.*

"Courts in other jurisdictions have held that a juvenile who deliberately misrepresents his age as being over the juvenile age waives his or her right to be treated as a juvenile. *Penn v. Peyton,* (W.D.Va. 1967) 270 F.Supp. 981; *Smith v. State,* (Fla.App.1977) 345 So.2d 1080; *People v. Henderson,* (1971) 2 Ill.App.3d 285, 276 N.E.2d 377; *State v. Peterson,* (1966) 9 Ohio Misc. 154, 223 N.E.2d 838; *Sheppard v. Rhay,* (1968) 73 Wash.2d 734, 440 P.2d 422; *Nelson v. Seattle Municipal Court,* (1981) 29 Wash.App. 7, 627 P.2d 157; *Cf. People v. Smith,* (1974) 59 Ill.2d 236, 319 N.E.2d 760 (where 16 year old defendant had misrepresented age to police and his true age was discovered immediately after entering guilty plea, trial court acted properly in vacating guilty plea and remanding case to juvenile court. But court approved the holding in *Henderson* that a deliberate misrepresentation of age and a failure to attempt to rectify for two months amounted to a waiver of rights as a juvenile.) *See also Forder v. State,* (Tex.Cr.App.1970) 456 S.W.2d 378, (Defendant told arresting officer he was 17, when in fact he was only 16, and confessed. Under the circumstances, failure to take him before a juvenile court immediately upon arrest and failure to notify his mother before taking his confession was not reversible error.)

"*Penn* is factually quite similar to this case. There, the defendant in a Virginia state court action told the police, his attorney, and the court that he was eighteen. In fact, he was three months short of seventeen. Six years later, he filed a state *habeas corpus* action, and upon denial, filed a federal *habeas* action seven years after his conviction. In the federal proceeding he contended he had been deprived of his constitutional rights by the failure to comply with juvenile law procedures. The federal court held he had waived his right to a juvenile investigation. The court observed that under Virginia law failure to conduct the statutory investigation (waiver proceedings) deprives the court of jurisdiction to try the defendant as an adult. But, the court noted, all the cases so holding dealt with situations where the court *knew* the defendant was under eighteen. In discussing the problem presented in *Penn,* the court stated:

'Thus, if the trial court here had notice that petitioner was a minor, it is clear the trial court should not have tried petitioner as an adult without conducting the statutory investigation. But in the present case the trial court had no notice that petitioner was a minor, and had been misled by petitioner's assertion that he was 18 years of age.

. . . .

'This court feels that petitioner waived his right to the statutory investigation by misrepresenting to the trial court that he was 18 years of age. To hold otherwise would place an unconscionable burden on the state courts. To uphold petitioner's contention would require the state courts to conduct an independent investigation to determine the true age of every defendant. Any minor defendant would be able to mislead a court and take his chances on being tried as an adult, and then if unsatisfied with the result, the minor defendant could assert his minority and have the conviction set aside . . . . In the present case . . . this court feels that petitioner waived his rights as a minor by misrepresenting his true age.' 270 F.Supp. at 984–85.

"In *Nelson,* a street-wise teenage prostitute deceived the court into believing she was over eighteen, received a suspended sentence, and later asserted her juvenile status when faced with probation revocation, a fact not unlike Twyman's assertion of juvenile status after being sentenced as an habitual offender. The Washington Court of Appeals held she had waived her right to be treated as a juvenile, saying:

'By her intentionally deceptive conduct, she avoided juvenile court where she would have been connected to her record there and treated accordingly. She opted instead to go to adult court where she received a deferred sentence. It was only when it appeared likely she would go to jail because of her probation violations that she claimed her rights as a juvenile. This the law will not countenance.'

627 P.2d at 159.

"The Illinois Court of Appeals in *Henderson* said that a '[d]efendant should not be allowed to take her chances in the Criminal Division, and upon an adverse outcome, demand reversal and a new trial in the Juvenile Court.' 276 N.E.2d at 378. And, the Ohio Court in *Peterson* observed that a contrary decision 'could well cause a high incidence of age misrepresentations with the deceitful party waiting to see how he fares in adult court before disclosing his minority. This not only is fraudulent, but would be a ridiculous mockery of the courts.' 223 N.E.2d at 840.

"Thus, we believe that it would be a mockery of the courts and our judicial system if Twyman, who deliberately deceived the criminal court as to his age and accepted the benefit of a plea bargain substantially reducing the charge, were allowed, eight years later, when faced with an enhanced sentence as an habitual offender, to assert his juvenile status for the first time, and have his conviction vacated." 452 N.E.2d at 438–39. (Footnotes omitted.)

■ Having perpetrated a fraud upon the criminal court, and having received benefit from such subterfuge, appellant is estopped from raising the issue in the post-conviction proceeding.

■ Appellant also argues the trial court erred in determining appellant had been guilty of laches and thereby waived the issue of his juvenile status at the time he entered his plea of guilty. The post-conviction relief proceeding is in the nature of a civil action. The petitioner has the burden of proving entitlement to relief by a preponderance of the evidence. Ind.R.P.C.R. 1, §§ 5, 7. The Post-Conviction Remedies Rules provide:

"SECTION 1. Remedy—To whom available—Conditions.

"(a) Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims:

"(1) that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state;

"(2) that the court was without jurisdiction to impose sentence;

\* \* \* \* \* \*

"may institute *at any time* a proceeding under this Rule to secure relief." (Our emphasis.)

■ The plain and unambiguous words of the rule allow a petitioner to bring his petition for post-conviction relief regardless of the length of time he has waited to assert the claim.

"All rules and statutes applicable in civil proceedings ... are available to the parties." Ind.R.P.C.R. 1, § 5. Thus, the State, as the respondent party to the proceedings, may raise the doctrine of laches as an affirmative defense to petitioner's claim pursuant to Ind.R.Tr.P. 8(C), which reads:

"(C) Affirmative defenses. A responsive pleading shall set forth affirmatively and carry the burden of proving: ... laches .... A party required to affirmatively plead any matters ... shall have the burden of proving such matters."

■ Thus, before the petitioner's claim for relief may be denied, based on the doctrine of laches, the State must affirmatively plead the defense in its responsive pleading. It is then required to prove the defense by a preponderance of the evidence. In the case at bar the State's answer, in part, reads: "The State answers that the issues raised in rhetorical paragraphs 8(a) have been waived as grounds for post-conviction relief since they have

been available to Petitioner since July 29, 1974." Assuming this to be an adequate pleading of the affirmative defense, the State's proving this delay at trial would not by itself support a finding that laches applied. *Frazier v. State,* (1975) 263 Ind. 614, 335 N.E.2d 623.

" '[Laches] is the neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the other party and thus operating as a bar in a court of equity. [Citation omitted.]'

    *        *        *        *        *        *

"The question of laches is one to be determined by the court in the exercise of its sound discretion from the facts and circumstances of each case. *State ex rel. Harris v. Mutschler* (1953), 232 Ind. 580, 115 N.E.2d 206. Although an element thereof, the lapse of time alone does not constitute laches. *Sinclair v. Gunzenhauser* (1913), 179 Ind. 78, 98 N.E. 37, rehearing denied 179 Ind. 78, 100 N.E. 376. Other factors also bear substantially upon the determination, among them the reasonableness of a delay and the prejudice, if any, to the adversary.

    *        *        *        *        *        *

"Although thirty-nine years had elapsed since his conviction, the petitioner had a right under PC Rule 1 and *Langley; Richardson v. State,* [ (1971) 256 Ind. 199, 267 N.E.2d 538,] to have his petition determined upon the evidence, because as previously stated, diligence is not a prerequisite to relief under PC Rule 1. *Langley; Richardson, [supra]* did not hold, however, that by filing for relief under this rule, the defense of waiver could be foreclosed. In fact, the contrary was clearly stated. The same may logically be said of the very similar

defense of laches. Although the timeliness of the petition was a factor properly to be taken into consideration at the hearing, it was not properly put into issue by the motion to dismiss, because it was not determinable without an evidentiary hearing." 335 N.E.2d at 624–25.

In the case at bar, the Court of Appeals said: "Although laches is an affirmative defense ..., our cases indicate that once the defense is raised by the state, the petitioner must explain his delay in filing," *citing Stutzman v. State,* (1981) Ind.App., 427 N.E.2d 724, and *Baker v. State,* (1980) Ind., 403 N.E.2d 1069. The portion of *Stutzman* evidently supporting this position is in error: "The burden to offer an adequate excuse or reasonable showing for the delay was on Stutzman," *Stutzman, supra,* at 727, *citing Frazier, supra.* In *Baker* we said the petitioner had the burden of proving relief was merited, but no reference whatever was made to which party carried the burden of proving the affirmative defense of laches. Laches was not an issue in *Baker.*

■ We hereby overrule *Stutzman* and all cases following it on this subject. The law in Indiana is still that once the State raises the affirmative defense of laches in a post-conviction relief proceeding the petitioner is entitled to an evidentiary hearing upon the issue, before the judge may find laches applies. The burden of proving the defense rests entirely upon the State. The petitioner may prove evidence to negate the State's evidence, but this in no way shifts the onus to the petitioner to disprove laches.

■ The post-conviction court erred in denying appellant relief under the doctrine of laches on the basis that eight years had passed since the claim for relief first became available to him. However, in light of our determination that appellant waived the issue of the criminal court's jurisdiction over his person, the denial of relief is affirmed.

The trial court is affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

## ON PETITION TO TRANSFER

DeBRULER, Justice, dissenting.

This dissenting opinion is based upon the assumptions that at the 1974 plea proceeding in the criminal court, (1) appellant was a child not yet eighteen years old, (2) his conduct had not involved a violation of any criminal statute automatically excluded from juvenile court jurisdiction, and (3) there had been no waiver of juvenile jurisdiction by the juvenile court. Each of these assumptions satisfies an applicable statutory element of juvenile jurisdiction: age, type of offense, and waiver of jurisdiction by the juvenile court at the time of the plea. Each of these elements was initially erected by the juvenile statute for the purpose of creating and delineating juvenile jurisdiction and *conferring* it solely and exclusively upon juvenile courts in Marion County and Lake County, and conferring it in concurrent form upon the Circuit and Superior Courts in the remaining counties of the State. *State ex rel. Gannon v. Lake Circuit Court et al.,* (1945) 223 Ind. 375, 61 N.E.2d 168. It is abundantly clear that the Marion Criminal Court at the 1974 plea proceeding had no jurisdiction at all to hear and determine appellant's guilt of assault and battery with intent to commit a felony.

This is the same situation which this Court faced in *Cummings v. State,* (1969) 252 Ind. 701, 251 N.E.2d 663. There, the defendant, a sixteen year old was convicted in the circuit court of inflicting an injury in the course of a robbery. It was not discovered until after the judgment was rendered that the criteria for juvenile court jurisdiction were present. We held that she had not been within the jurisdiction of the circuit court and that the judgment of the circuit court could not stand. In this case the apparent lack of jurisdiction has appeared further on down the road at a post-conviction proceeding. In *State ex rel. Atkins v. Juvenile Court of Marion County,* (1969) 252 Ind. 237, 247 N.E.2d 53, another case involving the relationship between criminal and juvenile jurisdiction, this Court would not even recognize jurisdiction in the criminal court to transfer an indictment to the juvenile court, where the indictment showed on its face that the defendants were juveniles and subject only to initiation of proceedings in the juvenile court. These cases highlight an important point. The Legislature in enacting the juvenile statute identified a social problem involving the delinquency of children, and the lack of parental effort and support, and created a new and special court to deal with it. The entire concept of crime received a narrowed redefinition. This Court should, where the Legislature requires it, keep the business of such specialized courts as the juvenile court and the criminal court separate, so that each may effectively enforce the laws assigned to it to the end that the social problems targeted be dealt with.

The *Gannon* case reveals the legal concepts of court jurisdiction which were at play at the time of the creation of the Marion Criminal Court and Marion Juvenile Court. Both followed the circuit court. There the Court said:

"[W]hen the first Constitution of Indiana was adopted all 'judiciary power' was vested in 'one Supreme Court, in Circuit Courts, and in such inferior courts as the General Assembly may from time to time direct and establish.' Art. 5, § 1, Constitution 1816. Exclusive probate and criminal jurisdiction therefore existed in circuit courts until others were established. Likewise when the Constitution of 1851 took effect such jurisdiction under Art. 7, § 1, had to be in the circuit courts until others were created. If the word 'exclusive' has any significance whatever, there can be no question that the acts last referred to [including the one creating the Marion Criminal Court which convicted and sentenced appellant in 1974] removed jurisdiction from the circuit courts and conferred it upon the new

courts in all counties affected by the acts.

\* \* \* \* \* \*

If the present act [the act creating the Marion Juvenile Court] is unconstitutional on this ground [that the Circuit Court is rendered inferior to the Juvenile Court] then likewise are the acts creating the criminal courts and probate courts above mentioned. In view of their long existence and judicial as well as legislative acceptance of the validity of the acts by which they were created we would not now be justified in casting doubt upon their right to exercise the exclusive jurisdiction given them by the respective statutes." 223 Ind. at 389–90, 61 N.E.2d 168.

As a conceptual matter the use of the language in the statute first creating the Marion Criminal Court that "such criminal court shall have original exclusive jurisdiction ... of all crimes and misdemeanors" is considered to have *removed that part* of the total circuit court jurisdiction which was criminal jurisdiction, which was itself original and exclusive, and then *conferred* that part upon the newly created criminal court. In like fashion therefore it seems quite logical and proper to give commensurate force to the employment of the same language in the statute creating the Marion Juvenile Court. It states that:

"The juvenile courts ... shall have original exclusive jurisdiction, except after jurisdiction of the child is waived in all cases in which a child is alleged to be delinquent, dependent or neglected, including the alleged delinquency, dependency or neglect of a child of divorced parents."

The language must be considered to have *removed that part* of the total criminal court jurisdiction by which it determined the guilt of a certain class of crimes committed by infants and *conferred* the jurisdiction to deal with them upon the newly created juvenile court. And the divestiture of criminal jurisdiction from the criminal court is accomplished without a specific amendment of the statute granting the criminal court the "original exclusive jurisdiction ... of all crimes and misdemeanors." I see no way to seriously consider that this case is one but involving a question of mere "over the person" jurisdiction.

The criminal court and the juvenile court were at the time of this plea, two separate courts, each conducting its own business within confines set by statute. The one exercising criminal jurisdiction and the other juvenile jurisdiction. When the criminal court convicted and sentenced appellant the criminal court was addressing a matter which should have been before the juvenile court, but which was not, and as a legal consequence its judgment was void. The reason that the law will not permit fraud or consent of a party to lift such a judgment at any time to legitimacy and enforceability is the great importance of the public policies which move the Legislature to create specialized courts and relegate "original and exclusive" jurisdiction to them.

The findings and conclusions of law rendered below are not clear to me. I would therefore reverse and remand for a new hearing to determine whether the three criteria for juvenile court jurisdiction were satisfied at the time of the plea, and if they were, to grant post-conviction relief.