Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JUSTIN B. MILLS**
Marengo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HERMAN GEHL, II, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 59A01-1401-PC-12 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ORANGE SUPERIOR COURT
The Honorable K. Lynn Lopp, Special Judge
Cause No. 59D01-1307-PC-493

**August 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Herman Gehl, II appeals the post-conviction court's denial of his petition for post-conviction relief. Gehl raises two issues which we consolidate and restate as whether the court erred in denying his petition for post-conviction relief on the basis of laches. We affirm.

FACTS AND PROCEDURAL HISTORY

In September 1989, the State charged Gehl with illegal consumption of an alcoholic beverage as a class C misdemeanor under cause number 59E01-8909-CM-286 ("Cause No. 286"). That same month, the court ordered Gehl released on his own recognizance and scheduled a pretrial conference for November 7, 1989.

In October 1989, the State charged Gehl with possession of marijuana as a class A misdemeanor in cause number 59E01-8910-CM-326 ("Cause No. 326"), and the court scheduled a pretrial conference for November 28, 1989.

On November 7, 1989, Gehl appeared and pled guilty to illegal consumption of an alcoholic beverage in Cause No. 286.[1] At that same hearing, the court discussed the possession of marijuana charge under Cause No. 326, and Gehl pled guilty to the charge and was sentenced to 365 days with 357 days suspended to probation.

Gehl had multiple charges filed against him and at some point was charged with operating a vehicle while intoxicated and being an habitual substance offender. On July 14, 2013, he filed a petition for post-conviction relief alleging that he was in court on November 7, 1989, on Cause No. 286 and not Cause No. 326. Gehl also alleged that he was not read his rights under Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969),

_____

[1] The caption page of the transcript of the November 7, 1989 hearing lists Cause No. 326.

2

was not made aware of the possible repercussions of pleading guilty to that offense, and was not given proper notice for the hearing. In its response, the State raised the affirmative defense of laches.

On October 16, 2013, the post-conviction court held a hearing. William Kerby, an owner of a bowling alley, testified he recalled Gehl sitting in a car near his bowling alley, he called the police to report suspicious activity, the police eventually checked on Gehl, and the police went through the "car and stuff, so, um, we figured well they must of [sic] found something." Transcript at 21. Indiana State Trooper Greg Ashby testified that he obtained the Case Report of the Investigating Officer, Trooper Bill Flick, and the Property Record and Receipt indicated that "a sealed plastic bag containing three (3) suspect marijuana cigarettes" was taken into custody. State's Exhibit 2. Trooper Ashby also testified that the evidence was destroyed on March 6, 1990. The State introduced an affidavit of a forensic scientist stating that records indicated that he performed an analysis in 1989 on the cigarettes, that the records were destroyed after fifteen years, and that he had no independent recollection of the analysis of the three cigarettes. Retired officers involved in the arrest testified or submitted affidavits indicating that they had no recollection of the arrest.

The State also presented evidence of Gehl's criminal history subsequent to November 1989. When asked why he waited until 2013 to file a petition for post-conviction relief, Gehl answered that he "really wasn't aware of [his] *Boykin* Rights until [his current attorney] pointed them out to [him]." Transcript at 65. Gehl also stated that he never had the opportunity to acquire the transcripts from the 1989 case. On cross-

3

examination, Gehl testified that he was not really aware of what post-conviction relief was or that he could file such a petition for post-conviction relief to challenge convictions. He also testified that his cousin, Ronnie Moon, was with him on the day that he was arrested for possession of marijuana and that Moon resided in Crawford County.

On December 9, 2013, the court denied Gehl's petition. The court's order states in part:

> [Gehl] waited nearly twenty-four years before filing his Petition for Post-Conviction Relief (11/7/1989 date of conviction to 7/24/13 date of Petition). The Indiana Courts of Appeal have found less passage of time coupled with other factors sufficient for unreasonable delay. In McCollum v. State[,] 671 N.E.2d 168 ([Ind. Ct. App.] 1996)[, clarified on reh'g, 676 N.E.2d 356 (Ind. Ct. App. 1997), trans. denied] a 12 year delay was sufficient; in Lacy v. State[,] 491 N.E.2d 520 [(Ind. 1986)], Pinkston v. State[,] 479 N.E.2d 79 ([Ind. Ct. App.] 1985)[, reh'g denied, trans. denied] 10 year delay; Gregory v. State[,] 487 N.E.2d 156 (Ind. 1986) 13 year delay. The State of Indiana presented evidence that [Gehl] has had repeated contact with the criminal justice system in the time between his conviction and the filing of his Petition. [Gehl] was charged with and held to answer to twelve different criminal charges with various counts over the twenty-four year period. The State has presented evidence through waivers of initial hearings, misdemeanor advisement of rights, finding and judgments and criminal chronological case summaries that [Gehl] was advised of his rights and the waiver of his rights on numerous occasions in those cases over that twenty-four year period.
>
> In addition the State presented evidence that [Gehl] served a ten year sentence to the Indiana Department of Corrections in 59C01-8912-CF-160 for Armed Robbery and during that time had consultation with attorneys and had access to the legal facilities there. This charge was filed on . . . December 21, 1989, less than two months after his conviction on the Possession of Marijuana on November 7, 1989 in [Cause No. 326]. This access to legal facilities and knowledge of the legal system is further demonstrated by [Gehl] filing for sentence modifications and for transfer of custody on his own in 59C01-8912-CF-160. [Gehl] also represented himself at least six times in criminal proceedings, negotiating plea agreements and having some charges dismissed. He was also represented by counsel in at least five different criminal proceedings including the

Armed Robbery in 59C01-8912-CF-160.  All of these factors prove that [Gehl] "unreasonably delayed in seeking relief".

The State of Indiana must also prove that it has been prejudiced by [Gehl's] unreasonable delay.  "Prejudice as to the State's ability to retry a petitioner does not require a showing of the impossibility to present any case at all.  If a reasonable likelihood exists that a successful prosecution is materially diminished by the passage of time attributable to the petitioner's neglect, such may be deemed a sufficient demonstration of prejudice." Baxter v. State, 636 N.E.2d 151 (Ind. [Ct. App.] 1994)[, reh'g denied, trans. denied.]

The arresting and two assisting officers testified at the hearing that they had no independent recollection of the facts or circumstances leading to [Gehl's] arrest and conviction on the Possession of Marijuana charge.  In addition, the State presented evidence that the suspected marijuana in this case was destroyed in 1990.  The three cigarettes suspected of being marijuana were originally analyzed in this case but the forensic scientist, William S. Bowles, that performed the analysis testified that not only did he not have any independent recollection of the analysis but also that any records related to the analysis were destroyed fifteen years after the analysis was done.

"The inability to reconstruct a case against a petitioner is demonstrated by unavailable evidence such as destroyed records, deceased witnesses, or witnesses who have [no] independent recollection of the event."  McCollum v. State[,] 671 N.E.2d 168, 171-172 ([Ind. Ct. App.] 1996) quoting Taylor v. State[,] 492 N.E.2d 1091, 1093 ([Ind. Ct. App.] 1986).  See also Holmes v. State[,] 591 N.E.2d 594 ([Ind. Ct. App.] 1992)[, trans. denied], Moser v. State[,] 562 N.E.2d 1318 ([Ind. Ct. App.] 1990) arresting officer(s) had no independent recollection of the arrest.

The State of Indiana has shown that its ability to retry [Gehl] has been prejudiced by the passage of time attributable to [Gehl's] neglect by showing that the destruction of the evidence, destroyed records and the faded memories of the witnesses has materially diminished the likelihood of a successful prosecution.

Appellant's Appendix at 13-15.

DISCUSSION

The issue is whether the court erred in denying Gehl's petition for post-conviction relief on the basis of laches. Gehl argues that he had no knowledge of the defect in his conviction, the State failed to present any objective proof that he knew of the defects in his plea, and he cannot be held to have unreasonably delayed in taking action when he had no knowledge of the defects in his plea. He also argues that the State did not demonstrate prejudice because it still had the case report, the property record and receipt, and the report of the laboratory examination of the marijuana. He asserts that the destruction of the marijuana occurred on March 9, 1990, and had nothing to do with the delay in filing his petition, that the State failed to take any action to attempt to locate his cousin who was the codefendant charged in the case, and argues that the facts in this case are similar to those in Holland v. State, 609 N.E.2d 429 (Ind. Ct. App. 1993). The State argues that Gehl unreasonably delayed in pursuing post-conviction relief and that it was prejudiced by the delay.

While post-conviction relief is available at any time, the right to post-conviction relief may be waived directly or through implication. Perry v. State, 512 N.E.2d 841, 843 (Ind. 1987), reh'g denied. Laches is a doctrine which infers a legitimate waiver of the right to challenge a judgment. Id. The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. Armstrong v. State, 747 N.E.2d 1119, 1120 (Ind. 2001) (citing Twyman v. State, 459 N.E.2d 705, 712 (Ind. 1984)). For laches to apply, the State must

6

prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State is prejudiced by the delay. Id. (citing Williams v. State, 716 N.E.2d 897, 901 (Ind. 1999)). Unless a petitioner has knowledge of a defect in his conviction or of the means to seek relief from the conviction, he can seldom be said to have delayed unreasonably in seeking relief. Perry, 512 N.E.2d at 843. The doctrine of laches cannot be predicated upon constructive knowledge and inquiry notice alone is not sufficient to support a finding of unreasonable delay under circumstances permitting diligence. Id. at 844. Knowledge may not be presumed from the occurrence of any particular event. Id. Nonetheless, the State is not required to supply direct proof of petitioner's knowledge. Id. Circumstantial evidence is sufficient to show state of mind. Id. Facts from which a reasonable finder of fact could infer petitioner's knowledge may support a finding of laches. Id. Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which the fact finder may infer knowledge. Id. at 845. For post-conviction laches purposes, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution. Armstrong, 747 N.E.2d at 1120.

Because the State had the burden of proving laches as an affirmative defense, Gehl is not appealing from a negative judgment, and the applicable standard of review requires that we affirm unless we find that the judgment was clearly erroneous. See id. This is a review for sufficiency of evidence. Id. Without reweighing the evidence or assessing the credibility of witnesses but rather looking only to the evidence and reasonable inferences

7

favorable to the judgment, we will affirm if there is probative evidence to support the post-conviction court's judgment.  Id.

To the extent that Gehl claims he was not informed of his Boykin rights at the November 7, 1989 hearing, we observe that in Boykin, the United States Supreme Court held that it was reversible error for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary.  395 U.S. at 242, 89 S. Ct. at 1711.  More particularly, Boykin requires that the record must show, or there must be an allegation and evidence which show, that the defendant was informed of, and waived, three specific federal constitutional rights: the privilege against compulsory self-incrimination, right to trial by jury, and the right to confront one's accusers.  Id. at 243, 89 S. Ct. at 1712.

Following his sentence in November 1989, Gehl had further contact with the courts, contacted the courts, and was informed of his Boykin rights on multiple occasions.  In December 1989, the State charged Gehl with armed robbery and criminal confinement.  In that case, he had the benefit of counsel, pled guilty to armed robbery, and served six years.  Gehl testified that he had access to a law library and materials where he could file pleadings with the court while he was in jail.  In May 1991, Gehl typed, signed, and filed a petition for modification of his sentence with the trial court.  In June 1991, he filed a *pro se* petition for transfer of custody and he filed a *pro se* petition for sentence modification.  In March 1992, he filed another petition for sentence modification.

At some point, Gehl was arrested in Alabama, and his probation in Indiana was revoked in May 1994. In January 1996, Gehl filed another *pro se* motion for modification of sentence. In 2002, he was arrested for operating a vehicle with a B.A.C. of .15 or more and Gehl represented himself and worked out a plea agreement with the prosecutor. In that case, Gehl signed a Misdemeanor Written Advisement and Waiver of Rights on April 22, 2002, which informed him that he had certain rights including the right to an attorney, the right to a continuance, the right to not testify, the right to a trial by jury, and the right to confront and cross-examine witnesses. At the post-conviction hearing, Gehl admitted that he either read the waiver or the deputy prosecutor at the time would have read it.

In 2003, the State charged Gehl with invasion of privacy, battery, and criminal mischief. He represented himself, and the case was dismissed. That same year, the State charged him with two counts of battery, Gehl signed a Waiver of Initial Hearing which informed him of certain rights including the right to an attorney, the right to a speedy trial, and the privilege against self-incrimination. He was represented by counsel, and this case was also dismissed.

In 2004, the State charged Gehl with operating a vehicle while intoxicated. He represented himself and negotiated a plea agreement. He signed a Misdemeanor Written Advisement and Waiver of Rights which indicated that he had the right to a trial by jury, the right to confront and cross-examine witnesses, and the right to not testify. He also signed a Waiver of Appearance and Written Report of Initial Hearing which informed

9

him of the right to confront and cross-examine witnesses, the right to a trial by jury, the right to not testify, and the right to appeal.

In 2008, the State charged Gehl with battery, Gehl represented himself, and the case was dismissed. Gehl signed a Waiver of Appearance and Written Report of Initial Hearing which informed him of certain rights, and he testified at the post-conviction hearing that he understood his rights.

In May 2009, the State charged Gehl with invasion of privacy. In July and August 2009, Gehl again signed a Waiver of Appearance and Written Report of Initial Hearing and a Misdemeanor Written Advisement and Waiver of Rights informing him of his constitutional rights.

In December 2009, the State charged him with battery. He requested appointment of counsel, and the court appointed counsel. In 2010, Gehl again signed a Written Advisement and Waiver of Rights and a Waiver of Appearance and Written Report on Initial Hearing informing him of certain rights.

The record demonstrates that Gehl was informed of his Boykin rights as early as April 22, 2002, which was more than eleven years before he filed his petition for post-conviction relief on July 14, 2013. Under the circumstances, including Gehl's incarceration in facilities with a law library, his repeated contacts with the criminal justice system, his consultation with attorneys, his multiple filing with the courts, and the repeated advisements of his Boykin rights, we cannot say that the post-conviction court clearly erred in finding that the State had demonstrated by a preponderance of the evidence that Gehl unreasonably delayed in seeking relief. See Lacy v. State, 491 N.E.2d

10

520, 521 (Ind. 1986) (holding that the petitioner's failure to take action for six years after learning of the rights upon which he bases his appeal permits a reasonable inference that the delay was unreasonable).

We next address whether the State is prejudiced by the delay. While the State did not present evidence relating to any attempt to contact Gehl's cousin who Gehl alleged was with him the day he was arrested, the State presented the testimony and affidavits of others involved. At the post-conviction hearing, Kerby, the owner of the bowling alley, could only testify that the police went through the "car and stuff, so, um, we figured well they must of found something." Transcript at 21. John Rosenbaum, a retired officer from the Paoli Police Department, was informed by the prosecutor that records indicated that he participated in the arrest or was a witness to Gehl's arrest and was asked for his memory of his participation in that arrest, and Rosenbaum answered: "I have no recollection of that whatsoever." Id. at 17.

The court admitted the affidavit of William Flick, a retired Indiana State Police Trooper, which stated that records indicated that he was the arresting officer of Gehl, that this occurred approximately twenty-four years ago, and that he did not have any independent recollection of the facts or circumstances leading to Gehl's arrest on October 7, 1989. The court also admitted the affidavit of William Bowles, II, that stated that he was a forensic scientist for the Indiana State Police, that records indicated that he performed an analysis in 1989 on three cigarettes that were taken into evidence, the records of the Indiana State Police Laboratory were destroyed after fifteen years, the

11

records therefore no longer exist, and that he had no independent recollection of the analysis of the three cigarettes.

Trooper Ashby testified that he obtained the Case Report of the Investigating Officer, Trooper Flick, and the Property Record and Receipt which indicated that "a sealed plastic bag containing three (3) suspect marijuana cigarettes" was taken into custody. State's Exhibit 2. Trooper Ashby testified that the evidence was destroyed on March 6, 1990.

Under the circumstances, we cannot say that the post-conviction court clearly erred in finding that the delay operates to materially diminish a reasonable likelihood of successful re-prosecution. See French v. State, 547 N.E.2d 1084, 1088 (Ind. 1989) (holding that there was ample evidence in the record to support the court's finding that laches applies where the victim of the robbery was deceased, the investigating officers had since retired, and those who were available did not have distinct recollection of the details of the case nor did they have access to records which would disclose the same).

To the extent that Gehl cites Holland, we find that case distinguishable. In Holland, "[n]o evidence at all was offered to prove Holland had knowledge of a defect in his conviction or of the means to seek relief." 609 N.E.2d at 431. The court held that the record was devoid of evidence to support the post-conviction court's finding that the petitioner unreasonably delayed filing his petition. Id. With respect to whether the State had been prejudiced by the delay, the State did not present any evidence indicating that the inability to locate the victim, witnesses, and police officers was the result of a diligent search and the evidence consisted of a mere statement that the people could not be

12

located.  Id.  The court held that the State did not carry its burden of proving that it was prejudiced by the petitioner's delay in filing his petition.  Id.

Unlike in Holland, this case, the State presented testimony and documents relating to Gehl's criminal history, advisements of his rights, and his filings with the courts.  The State also presented testimony and affidavits relating to its efforts to in obtaining information regarding the case against Gehl.  Accordingly, we find Holland distinguishable.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of Gehl's petition for post-conviction relief.

Affirmed.

BARNES, J., and BRADFORD, J., concur.