HENRY GRADY EMERSON *v.* STATE OF INDIANA.

[No. 971S264. Filed October 18, 1972.]

*Mrs. Harriette Bailey Conn,* State Public Defender, *David J. Colman,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant in this case was convicted of robbery in a trial before Honorable Robert Wade, Judge Pro Tem of the Marion County Criminal Court, and was subsequently sentenced to ten to twenty years at the Indiana State Prison. Appellant appealed the conviction alleging that the prosecutor's questions to a State's witness were suggestive of the appellant's identification in the court room. Emerson's conviction was affirmed by this Court in the case of *Emerson* v. *State* (1970), 253 Ind. 515, 255 N. E. 2d 532. Shortly thereafter appellant filed a petition for post conviction relief under Ind. PC. Rule 1, alleging that (1) the use of a photograph by the Indianapolis Police Department in its pre-trial investigation of the crime was so impermissibly suggestive of appellant's identity that it requires reversal, and (2) newly discovered evidence requires that the conviction be reversed and a new trial granted. A hearing was held on appellant's petition by the Honorable John T. Davis in the Marion County Criminal Court and relief was denied. Appellant now appeals that denial here.

Evidence at the original trial indicated that the victim of the alleged robbery, William Thornell, met a girl at the corner of 27th and Meridian, and offered to drive her home. After they arrived at her house the girl, Farah Broughton, asked him to wait while she went in and changed her clothes. When she came out of the house Miss Broughton requested that Thornell drive her over to a girlfriend's house. They proceeded to a stop sign at the end of the block where two men in a car behind Thornell's got out, forced Thornell out of his car at gunpoint and took his money. Apparently this operation took some minutes and a crowd began to gather around the cars. The two robbers, and Miss Broughton, got into the second car and sped away. Some people in the crowd

told Thornell that they recognized one of the robbers as being Henry Emerson, a resident of the neighborhood.

Lieutenant Offutt of the Indianapolis Police Department next testified that Thornell described his assailant to him and told him of the name, Henry Emerson, he had been given at the scene of the robbery. He further told the officer Miss Broughton had left with the robbers and showed Officer Offutt the house where he had waited for her prior to the robbery. Armed with this information the policemen went to the Indianapolis Police Department's identification branch and found that Henry Emerson resided at the house where Miss Broughton had told Thornell to wait for her. Officer Offutt took a picture of Emerson from his file at the police station and, a day or so following the robbery, showed the single picture to Thornell. Thornell identified that man as the man who had robbed him. Emerson was arrested sometime later. At the trial Mr. Thornell identified Emerson as his assailant. There was no evidence admitted as to the prior identification or the photograph itself.

Petitioner here asserts that this use of the single photograph violates due process in that it is impermissibly suggestive of the defendant's identity under the rule of *Simmons* v. *U.S.* (1968), 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247. The test laid down in that case was that:

> ". . . convictions based on eye witness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384.

The Supreme Court further recognized in that case, as it had in earlier pre-trial identification problems, that claims in this area should be evaluated in light of the totality of the surrounding circumstances and with consideration to the facts of each case. *Simmons* v. *U.S., supra;*

*Stovall* v. *Denno* (1967), 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199.

The record here indicates that the police used a single photograph of Emerson in its pre-trial investigation. This procedure is frought with danger and, absent an independent basis for identification, would require reversal of the conviction. In situations where the victims catch only a fleeting glance of a criminal or where some time has elapsed between the crime and their view of a single photograph the danger increases that what the witnesses are identifying at trial is not what they remember from the crime but what they remember from the photograph. *Simmons* v. *U.S., supra.* Courts have attempted to alert police departments to the risks of abuse in the pre-trial identification area and have previously suggested that the best way to avoid reversals on this ground would be for the department to adopt regulations incorporating the necessary constitutional safeguards. *U.S.* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. Several photographs, preferably not mugshot types, should be displayed to the victim with a request that he pick out his assailant. The pictures themselves should not indicate which among them, if any, the police believe the criminal to be, and the officer displaying the photographs should endeavor to do so in an impartial manner.

> "The police should take affirmative action to avoid giving the witness the idea that they have the man involved and what they are seeking is a confirmation from the witness." *Parker* v. *State* (1970), 254 Ind. 593, 261 N. E. 2d 562.

This method attempts to insure that any selection made by the victim is based on what he recalls from the crime and is not a product of the suggestive nature of the procedure employed.

The facts presented here indicate that this use of a single photograph was indeed suggestive of the identity of the

defendant. That in itself, however, does not dictate that the conviction must be reversed. The rule in such situations is clear that when it is apparent from the circumstances of the case that there existed a sufficient basis, independent of the photograph, for the identification of the defendant then the verdict will not be disturbed. *Wilson v. State* (1970), 253 Ind. 585, 255 N. E. 2d 817; *U.S. v. Cook,* 11 Cr. L. Rep. 2443 (8th Cir. 1972). Among those circumstances which should be investigated to determine if there is a sufficient independent origin for the identification are the "length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observing the witness and the opportunity to observe particular characteristics of the criminal." *Dillard v. State* (1971), 257 Ind. 282, 274 N. E. 2d 387.

The record in this case indicates that there existed sufficient basis for identification in spite of the unsatisfactory use of a single photograph. The robbery took at least several minutes to complete and was a face to face confrontation. The robbers wore no masks and performed the hold-up during daylight hours. Several people who had gathered around identified the gunman by name as Henry Emerson. Emerson and the girl in Thornell's car lived at the same address and left together following the hold-up. Officer Offutt, using the name given him by Thornell, showed a photograph to the victim only a day or so after the robbery and Thornell positively identified him. There is no evidence of any use of verbal guidelines by Officer Offutt in the identification procedure.

Taking these facts into consideration, along with the totality of the circumstances surrounding the robbery, and the use of the photograph we think that the record shows there was an independent source for Thornell's identification and that we can justifiably regard his in-court identification as not fatally tainted by the faulty photographic procedure used by

the police. There is little chance that the procedure utilized here led to mis-identification of Emerson at the trial.

Petitioner next urges that newly discovered evidence which was unavailable to him at the original trial requires a vacation of his conviction. The newly discovered evidence was in the form of oral testimony presented at the post conviction hearing below by Miss Farah Broughton who was the victim Thornell's companion on the day of the robbery. She did not testify at the original trial.

Evidence concerning Miss Broughton introduced at the original trial concerns testimony by Mr. Thornell that he had met her for the first time earlier that afternoon on a street corner and had offered to give her a ride home. He took her to her house where she went inside and came out again a few minutes later. She then asked him to drive her to a friend's house which was some distance away. At a corner down the street from the house the robbery took place and Miss Broughton got out of Thornell's car and left in the other car with the two robbers. The only other evidence concerning Farah Broughton at the original trial was testimony by a juvenile officer that she could not be located at that time.

At the post conviction hearing, however, Miss Broughton did testify and reveal that she had signed a statement for the police on the day of the incident. She admitted that her signature appeared on the statement but she claimed she had not given the statement to the police and, although she was fifteen years old at the time of the incident and had attended high school, could not read the statement nor understand most of it. She further stated that she had no idea how Officer Offutt had come upon the information in the statement. Officer Offutt testified that he questioned Miss Broughton shortly after the day of the incident that she gave him the statement which she then read and signed. The statement was admitted into evidence at the post conviction hearing and reveals that Miss Broughton met Thornell on the afternoon of the

incident. He asked her if she needed a ride and she accepted. On the way home he propositioned her and offered her forty dollars. She refused but asked him to wait outside her house and drive her to her girlfriend's house. Once inside the house Miss Broughton told her uncle, Henry Emerson, what had happened and Emerson told her to get back in the car and direct Thornell to drive down the block. According to Miss Broughton's statement Emerson threatened to "bash her head in" if she did not do as he told her. Miss Broughton did as directed and Emerson and a companion robbed Thornell at the stop sign down the street. Miss Broughton got in the car with her uncle and his friend and drove away.

At the post conviction hearing Farah Broughton repudiated this statement and gave another version of what took place. It essentially agreed with the first statement up to the point where Mr. Thornell dropped her off at her home. However, she denied that she asked him to wait for her or that her uncle instructed her to take Thornell down the street. Rather she said she was surprised to see Thornell still waiting for her when she came out of her house sometime later on her way to her girlfriend's house. She accepted his offer to drive her there and they proceeded to her friend's house a little way down the street. When the car stopped in front of her friend's house Miss Broughton got out and noticed two men from the car behind Thornell's walk up and rob Thornell at gunpoint. She recognized the two men as friends of her uncle. She did not get in their car but instead proceeded into her friend's house. Miss Broughton further testified that the robber could not have been her uncle because he was home at that time in bed. On cross examination she denied that she hid from the police at the time of the trial but was absent because she forgot the date, and had moved away from her home where no one could reach her.

An application for a new trial, made on the ground of newly discovered evidence, must be supported by affidavit and such

affidavit or affidavits must contain a statement of the ▮▮ facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Cansler* v. *State* (1972), 258 Ind. 450, 281 N. E. 2d 881; *Tungate* v. *State* (1958), 238 Ind. 48, 147 N. E. 2d 232. In deciding whether a piece of newly discovered evidence would produce a different result the presiding judge may properly consider the weight which a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case.

Here the new evidence was presented by a witness who had originally incriminated herself as an accomplice in the scheme to rob Thornell. She is closely related to the appellant and was evidently living in the same house at the time of the robbery. She signed a written statement a day or so after the incident which identified the appellant as the perpetrator. The statement corroborates the testimony of Thornell in every aspect of the incident, and affirmatively supports the State's case. The oral testimony given at the post conviction hearing absolutely contradicts the written statement and further conflicts sharply with several collateral points in Thornell's testimony among which is whether or not she fled with the robbers. Furthermore it clears Miss Broughton of any implications in the crime.

We agree with the trial court that this evidence would not impact decisively in the proposed new trial. Therefore the judgment is affirmed.

All judges concur.

NOTE.—Reported in 287 N. E. 2d 867.