**Eddie QUINN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1081S293.**

Supreme Court of Indiana.

June 10, 1982.

Carr L. Darden, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Quinn was convicted of second-degree murder at the conclusion of a jury trial in Marion County on July 31, 1975. He was sentenced to life imprisonment. Upon appeal to this court, his conviction was affirmed. *Quinn v. State*, (1976) 265 Ind. 545, 356 N.E.2d 1186. A hearing was held on appellant's motion for post-conviction relief under Ind.R.P.C. 1 on May 28, 1981. This motion was denied in July, 1981, and the present appeal follows.

Three errors are asserted in the denial of post-conviction relief below: 1) that the trial court erroneously found no evidence that appellant's trial counsel was ineffective; 2) that the trial court erroneously denied a new trial because of newly discovered evidence; and 3) whether appellant's sentence of life imprisonment for second-degree murder constitutes cruel and unusual punishment.

I

Appellant contends he did not have effective assistance of counsel because his counsel did not spend enough time with him in preparation of the case and further that his attorney failed to call two witnesses that appellant had asked him to call. When petitioner asserts the ineffectiveness of counsel as grounds for relief he must demonstrate by clear and convincing evidence that the conduct of his counsel reduced the entire criminal proceedings to a mockery of justice. *Harris v. State*, (1978) 267 Ind. 572, 372 N.E.2d 174; *Logston v. State*, (1977) 266 Ind. 395, 363 N.E.2d 975. Furthermore, Ind.R.P.C. 1 § 5 places the burden of proof upon the petitioner to establish grounds for relief by a preponderance of the evidence. *Harris v. State, supra; Payne v. State*, (1973) 261 Ind. 221, 301 N.E.2d 514.

Appellant claims that his attorney spent little time with him in the preparation of the case. The only evidence presented at the post-conviction relief hearing was appellant's allegation that his attorney spent only thirty minutes with him. Quinn claimed he hired Owen Mullin to represent him but Richard Gilroy actually handled the case. The record shows that both Mullin and Gilroy represented appellant at his trial, both by pleadings filed and activity of the attorneys in the case. The record shows that appellant Quinn stated to Mr. Gilroy that he employed both Mr. Mullin and Mr. Gilroy as attorneys. The record of the original proceedings shows that Gilroy was active in filing a motion *in limine*

in which he clearly demonstrated he was familiar with the State's case against Quinn and how it would be presented. He, furthermore, made many objections and thoroughly cross-examined each of the State's witnesses in a manner that showed he was aware of their background prior to coming to court. When State's witness Frazier testified, Gilroy was aware of Frazier's prior theft conviction and used it in an attempt to impeach the credibility of the witness.

At the post-conviction hearing, appellant stated that he had given the names of Patsy Lee Thomas and Debbie Reed to his attorney's secretary so that they could be called as witnesses at his trial. He stated that they were never called. Appellant said they were two persons who had been over to his house many times and would know about his relationship with his wife and daughter and would be able to testify that his daughter was lying about many of the things she had testified to, particularly the fact that he was jealous of his daughter and did not let her have any boy friends. There was no other testimony concerning these witnesses other than that given by appellant. There was no showing that these witnesses were available at trial, that they would have testified to facts appellant claimed they would at the post-conviction hearing, or as to the reason for not having been called. Trial counsel determines not to call a certain witness, or witnesses, from a strategy standpoint since it might appear the witnesses' testimony would either fail to help the defendant or perhaps would harm him. This Court has often held that speculation as to trial strategy is not relevant in reviewing an attorney's competence. *Green v. State*, (1978) 269 Ind. 329, 380 N.E.2d 1224; *Dull v. State*, (1978) 267 Ind. 549, 372 N.E.2d 171; *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686. There was no corroboration of appellant's testimony on these issues from any other witness. His trial lawyers were neither called as witnesses nor filed affidavits. The appellant has the burden of proof to establish grounds for relief by preponderance of the evidence. We will not set aside a decision of the trial court against the party bearing the burden of proof unless the evidence is without conflict and leads unerringly to a result not reached by the trial court. *Harris v. State, supra; Carroll v. State*, (1976) 265 Ind. 423, 355 N.E.2d 408; *Roberts v. State*, (1975) 263 Ind. 53, 324 N.E.2d 265. The trial court here properly found there was not sufficient evidence to raise a reasonable doubt as to the effectiveness of appellant's counsel at his original trial.

II

■ Appellant claims he was entitled to a new trial because of newly discovered evidence which was presented in the person of Sylvia Quinn, his daughter. Sylvia testified at the post-conviction hearing and stated that she had perjured herself at the appellant's original trial in some of the statements she had made there. As the State points out, however, it is difficult to determine just what is "new" in Sylvia's testimony when her testimony at the post-conviction relief hearing is compared with that of her testimony at the original trial. When Sylvia was asked to explain in what areas she did not testify truthfully at trial, she first responded that she had lied when she testified she saw the appellant with a gun on the evening of the shooting. As a matter of fact, the transcript of her testimony at trial shows that she testified she did not see Quinn with a gun on the evening of the shooting and, in fact, had never seen him with a gun. Sylvia further testified at the post-conviction hearing that she lied when she said she was at home when the shooting occurred and was an eye-witness to it. She said she had left the house to go to a neighbor's house to call the police when the shooting occurred and she did not know about the shooting until she returned home. This was the same testimony she gave at the trial. Sylvia stated that there had been an argument and she left the home to go to a neighbor's and call the police and then later found that her mother had been shot in her absence.

There was some "new" evidence presented at the hearing besides the evidence noted above. Sylvia testified at the trial that

there was a violent argument going on between the victim and appellant but at the hearing she said it was nothing more than a "little spat." She further stated at the hearing that she was lying when she said that her father was mean to her and had at one time raped her, and also said she had never been afraid of him. As we have often said, a judge at a post-conviction hearing has the responsibility of determining the credibility of the witnesses and his determination will be reversed only when the evidence is without conflict and leads unequivocally to the opposite result. *Baker v. State*, (1980) Ind. 403 N.E.2d 1069; *Roberts v. State*, (1975) 263 Ind. 53, 324 N.E.2d 265. The credibility of this witness was a matter for the trial judge to determine. Since the new trial was requested based on newly discovered evidence, the defendant must establish:

"(1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result."

*Emerson v. State*, (1972) 259 Ind. 399, 407, 287 N.E.2d 867, 871-2. It is apparent that the trial judge considered the fact that the witness was the daughter of the appellant and after the passage of five years, was willing to testify at his post-conviction hearing in an attempt to help free him at this time. Such a situation was faced by this Court in *Emerson*. In that case, new evidence was presented by a witness who had originally incriminated herself as an accomplice in the scheme to rob the victim. She was closely related to the appellant and was living in the same house with him at the time of the robbery. Although she had originally given a written statement which identified the appellant as the perpetrator, she testified at the post-conviction hearing in a manner that contradicted her written statements previously given. It was the

finding of this Court that the new evidence would not impact decisively in the proposed new trial. *Id.* at 407, 287 N.E.2d at 872. The Court of Appeals was faced with an analogous situation in *Tomlin v. State*, (1975) 163 Ind.App. 559, 325 N.E.2d 516. There the defendant's mother and brother testified two years after the trial that the defendant's mentally ill brother, who was apparently committed to an institution, had actually committed the crime and not the defendant. The Court of Appeals stated: "By its very nature, its tardiness, and because of the relationship of the witnesses to Tomlin, the 'newly discovered' evidence was understandably rejected by the trial court as a cause for a new trial." *Id.* at 562, 325 N.E.2d at 518. Under the above standards, the trial court properly found that the testimony of Sylvia Quinn did not present newly discovered evidence that merited the granting of a new trial.

### III

■ Finally, appellant Quinn argues that his sentence of life imprisonment for second-degree murder is unconstitutional because it is the same as the sentence for first-degree murder and because the statutes are void of criteria for the jury to use in arriving at its verdict. We handled this issue recently in *Millar v. State*, (1981) Ind., 417 N.E.2d 1105 where we held:

"This Court has previously considered and decided this issue and found that *Furman* did not apply. In *Wilson v. State*, (1978) 268 Ind. 112, 121, 374 N.E.2d 45, 50 our Court stated:

"Appellant further argues that the jury was not provided with adequate guidelines to choose between a life sentence and a lesser sentence of fifteen to twenty-five years in prison for the crime of second-degree murder. He argues that the lack of guidelines makes the jury's choice of the greater sentence cruel and unusual punishment under the concept of *Furman v. Georgia*, (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Appellant does not demonstrate that *Furman*, which dealt

with the death penalty, applies to sentences of imprisonment for murder as are involved in this case. Neither is it demonstrated that *Furman* stands for any constitutional mandate of 'guidelines' for use by the jury any time the sentencing function is undertaken. We do not believe that *Furman* so applies, and find this argument to be without merit."

Identical constitutional claims were also considered and rejected in *Jones v. State*, (1979) Ind., 385 N.E.2d 426 and in *Baum v. State*, (1978) 269 Ind. 176, 379 N.E.2d 437. We reaffirm our holdings in these cases and find no error in the denial of defendant's petition for post-conviction relief on these grounds."

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.