Danny J. RAY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

Herbert W. WHEELER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

Nos. 4–1083A353, 4–883A292.

Court of Appeals of Indiana,
Fourth District.

July 30, 1986.
Rehearings Denied Sept. 25, 1986.

Robert G. Andree, Jr., Applegate & Shapiro, Robert Delano Jones, Susan Lacava, Rogers, McDonald & Jones, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Michael Gene Worden, Deputy Attys. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Danny J. Ray and Herbert W. Wheeler appeal the denial of their petitions for post-conviction relief arising from separate dispositions in the trial court below. Their cases have been consolidated for consideration by this court since they involve these similar questions on the issue of laches in post-conviction relief settings:

1) whether "knowing acquiescence" is shown by evidence that the accused pled guilty to a misdemeanor charge and was fined;

2) whether a lost record entitles a defendant to a new trial if he fails to attempt to reconstruct the record.

The record in *Ray v. State* reveals that Ray pled guilty to a charge of driving while intoxicated (DWI) on July 11, 1979. The State concedes neither a tape nor transcript of the guilty plea hearing is now available. Following a subsequent arrest for DWI, Ray filed the instant P.C.R. 1 petition, challenging the 1979 guilty plea, alleging he was not advised of his constitutional rights waived by the plea. The State's answer raised the affirmative defense of laches. The trial court denied the petition on the basis of laches, and Ray appealed.

While the appeal was pending in this court, our supreme court decided *Twyman v. State* (1984), Ind., 459 N.E.2d 705. Among other things, the *Twyman* decision held the State bears the burden to establish the affirmative defense of laches in P.C.R. 1 proceedings. As the parties in the instant case extensively had argued the laches issue on appeal, this district retained jurisdiction but remanded the case for a hearing on the laches question in light of the *Twyman* decision.[1] *Ray v. State*

---

1. Shortly thereafter, our supreme court held that remand rather than reversal was the appropriate remedy in cases where the trial court has improperly placed the burden of disproving laches on the petitioner. *Woodford v. State* (1985), Ind., 484 N.E.2d 563.

(1984), Ind.App., 466 N.E.2d 1389 (Young, J., dissenting).

Following the hearing on remand, the trial court denied relief on the basis of laches, and entered the following findings:

Hearing on Issue of Laches having been held, the Court now finds as follows:

1) That the Petitioner had knowledge of the existing conditions under circumstances permitting action and unreasonably delayed seeking relief from those circumstances for a period of three and one-half years prior to contacting an attorney and seeking relief;

2) That he acquiesced in those circumstances, making no effort to correct same during that period of time;

3) That the State's ability to prove the events, now over four years in the past, is significantly diminished by the passage of time combined with the assumption that the case had been disposed of on July 11, 1979, (i.e., lack of active preservation of evidence and possible testimony).

4) That to allow the petitioner to now reopen the issues originally at bar would be prejudicial to the State;

5) That laches does apply in this case in addition to the reasons for denial stated by this Court after the original hearing on Post Conviction Relief held on May 23, 1983.

The record in *Wheeler v. State* reveals that Wheeler pled guilty to separate charges of DWI on December 20, 1974 and June 4, 1976. On December 10, 1982, he filed the instant petitions for post-conviction relief alleging he had not been informed of the constitutional rights he waived by his guilty pleas.[2] In particular he claimed he was not advised of his right to counsel in the 1974 case. The 1976 case petition also alleged Wheeler's counsel had discovered in October 1982, through articles published nationally, that breathalyzer equipment similar to the machine used to test Wheeler in 1976, and made by the same manufacturer, was affected by nearby radio traffic to the point it might render inaccurate readings in some cases. The State presented no evidence to rebut these contentions,[3] but raised the affirmative de-

---

**2.** Wheeler predicates his claims on IC 9-4-7-9, which provides:

Sec. 9. Rights of defendant. Before accepting a plea of guilty to a misdemeanor traffic offense, the court shall inform the defendant of his rights, which shall include, but not be limited to, the right to:

(1) engage counsel;

(2) a reasonable continuance to engage counsel to subpoena witnesses;

(3) have process issued by the court, without expense to him, to compel the attendance of witnesses in his behalf;

(4) testify or not to testify in his own behalf;

(5) a trial by jury; and

(6) appeal.

The court shall inform the defendant if he is convicted, that a record of the conviction will be sent to the motor vehicle commissioner of this state or of the state where defendant received his license to drive, to become a part of his driving record.

These advisements, with some additions and minor changes in terminology not relevant here, also are required for guilty pleas in other criminal cases by IC 35-35-1-2 (formerly IC 35-4.1-1-3). Our supreme court has held in a series of cases that failure to advise the defendant of rights waived by virtue of the guilty plea

as required by IC 35-35-1-2 invalidates the conviction. *See generally Carr v. State* (1983), Ind., 455 N.E.2d 343; *German v. State* (1981), Ind., 428 N.E.2d 234. In *Mottern v. State* (1984), Ind.App., 466 N.E.2d 488, 490, Judge Ratliff concluded compliance with IC 9-4-7-9 is equally as obligatory as compliance with IC 35-35-1-2. We agree, at least for cases involving misdemeanor motor vehicle offenses.

**3.** The State argues Wheeler failed to present competent evidence to support either petition. The State supports this argument with citations to cases involving the formal requirements for introducing evidence at full trials. Wheeler correctly argues these rules do not apply to admission of evidence in P.C.R. 1 proceedings. P.C.R. 1, § 5 explicitly allows the post-conviction court to consider *"affidavits,* depositions, oral testimony or *other evidence."*

In these cases Wheeler presented evidentiary affidavits incorporating the petitions' allegations and alleging other facts, court records from the cases and various exhibits. These materials were admissible under P.C.R. 1, § 5. Thus the State's reliance on appeal on *State v. Fair* (1983), Ind., 450 N.E.2d 66, where there was *no* competent evidence in the record is misplaced. We also note the State incorrectly argues the trial court improperly took judicial notice of the

fense of laches to both petitions. The parties stipulated the transcripts or tape recordings of the guilty plea hearings are no longer available, and the arresting officers have no recollection of either case.

The post-conviction court denied relief. Following the remand by this court, the post-conviction court entered the following findings:

1) That the Petitioner had knowledge of the existing conditions under circumstances permitting action and unreasonably delayed seeking relief from those circumstances for periods in excess of six and eight years prior to contacting an attorney and seeking relief.

2) That he acquiesced in those circumstances, making no effort to correct same during that period of time;

3) That the State's ability to prove the events of these cases has been significantly impaired by the passage of time combined with the assumption that the cases had been disposed of in 1974 and 1976, (i.e., active preservation of evidence and possible testimony was not deemed necessary);

4) That the defendant's acquiescence directly resulted in the diminution in the State's ability to prove its case, resulting in prejudice to the State;

5) That the doctrine of Laches must be applied in cases involving the facts of these cases if a reasonable degree of finality of this type of judgment is to be achieved;

6) That fundamental fairness mandates that these causes not be relitigated after an acquiescence in the original judgments for this period of time;

7) That Petitioner's Petition for Post-Conviction Relief should therefore be deemed barred and be denied.

P.C.R. 1, § 6 states the trial court in post conviction proceedings "shall make specific findings of fact and conclusions of law on all issues presented." The findings made by the trial courts in *Wheeler* and *Ray* are merely conclusions of law. Such findings are of little use to the appellate court on review, as we are presented with no clue as to why the courts concluded that Ray and Wheeler knew their rights had been violated, but unreasonably delayed seeking relief.

■ Nevertheless, we may affirm a trial court's decision if the evidence in the record supports its conclusion. *See St. Joseph's Hospital of South Bend v. Women's Pavilion* (1983), Ind.App., 451 N.E.2d 1126, 1129. Furthermore, we may overturn the decision of the trial court against the party bearing the burden of proof only if the evidence is without conflict and leads unerringly to a contrary result. *Quinn v. State* (1982), Ind., 436 N.E.2d 70; *see also Harris v. State* (1978), 267 Ind. 572, 372 N.E.2d 174, *cert. denied* 436 U.S. 961, 98 S.Ct. 3080, 57 L.Ed.2d 1128 (1977).

■ In a post-conviction relief proceeding, the burden of proof is on the petitioner to demonstrate entitlement to relief by a preponderance of the evidence. P.C.R. 1, § 5. When the state raises the affirmative defense of laches, the state must establish the following: 1) the petitioner's inexcusable delay in asserting his rights; 2) the petitioner's implied waiver arising from knowing acquiescence in existing conditions; and 3) circumstances causing the defendant/respondent prejudice. *Frazier v. State* (1975), 263 Ind. 614, 335 N.E.2d 623. Mere lapse of time is not sufficient to prove laches. The respondent must show the delay was unreasonable and prejudiced the opposing party. *Id.*

The sole fact that both Ray and Wheeler pled guilty to a misdemeanor charge and were fined does not support the inference that they had knowledge of their post-conviction rights and remedies. As a result, the trial court's finding of knowing delay

---

*records,* as opposed to transcripts of the guilty plea hearings. The post-conviction relief hearing was held January 17, 1983, prior to the repeal of IC 35–10–2–2, which our supreme court previously had construed to allow post-conviction courts to take judicial notice of the record of proceedings in the original prosecution. *See, Smith v. State* (1977), 266 Ind. 633, 635–636, 366 N.E.2d 170, 171. IC 35–10–2–2 was repealed by Acts 1983, P.L. 311–1983, § 49.

may be justified, if at all, only on the theory suggested in *Morrison v. State* (1984), Ind.App., 466 N.E.2d 783: "Certainly the conviction and incarceration of one who thought his rights to have been violated constitutes such circumstance as would put that one on inquiry as to means of appeal or other relief." *Id.* at 787. Because there is no evidence that either Ray or Wheeler were incarcerated or thought their rights had been violated prior to the filing of this action, the issue here is whether evidence that they pled guilty to a misdemeanor and were assessed a fine is sufficient, standing alone, to prove they were put on inquiry as to the validity of their pleas and convictions.

The belief that such evidence alone is sufficient clearly assumes that anyone who pleads guilty to a crime may be expected to exercise reasonable vigilance to ascertain whether his rights have been violated by the court. Such a de facto requirement of vigilance is clearly inconsistent with our case law on the laches defense as demonstrated in the leading case of *Miladin v. Istrate* (1954), 125 Ind.App. 46, 119 N.E.2d 12. In *Miladin,* a plaintiff suing to foreclose on a mortgage was called upon to prove a prior assignment of the mortgage purportedly signed by him was in fact forged. The defendant pointed out that the disputed assignment had been a matter of public record for nearly twenty years by the time suit was brought. Thus, the defendant argued, the plaintiff had constructive notice of the assignment such that, under the doctrine of laches, the plaintiff's claim was barred by his failure to assert his rights more promptly.

■ The court of appeals disposed of this contention as follows:

We have been cited to no case, nor have we found any, which holds that the doc-

trine of laches can be predicated upon constructive knowledge. It is sufficient to start the running of the statute of limitations, . . . but laches is an equity doctrine defined as the failure to act without unreasonable delay upon discovery of the thing complained of or upon discovery of facts and circumstances from which knowledge thereof will be imputed. It seems to us that discovery means something more than the knowledge with which the law charges one but which he does not actually have. Laches connotes a conscious indifference or procrastination which is wholly absent in one whose knowledge is constructive only.

*Id.* at 56, 119 N.E.2d at 18 (citations omitted). The facts here are similar to those in *Miladin.* Like the plaintiff in that case, petitioners could have discovered their claims against the state if they had been more vigilant to protect their rights. As in *Miladin,* however, petitioners here apparently had no actual knowledge of facts suggesting they had a claim against the state.[4] Thus, because the state showed no "conscious indifference or procrastination," essentially arguing instead that petitioners had constructive knowledge of their claims for relief, the evidence here was insufficient to establish a laches defense. More importantly, interpreting "knowing acquiescence" to include constructive knowledge conflicts with the principles stated in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 and *German v. State* (1981), Ind., 428 N.E.2d 234. In *Boykin,* of course, the Supreme Court held the Alabama trial court had committed plain error by accepting Boykin's guilty plea without any showing that he voluntarily and understandingly waived his right to a jury trial, his right to confront his accusers, and his privilege against self-incrimina-

---

**4.** One might arguably distinguish the facts here from those in *Miladin* on the grounds that Ray, having been present when the court accepted his guilty plea, was aware of all the facts on which his present claim was based. This analysis raises the difficult question of whether one who is aware of certain facts but is unaware that such facts are actionable is guilty of laches

when he fails to seek relief. Whatever the answer to this question might be in a purely civil setting, however, the solicitude we are required under *Boykin v. Alabama* (1969), 395 U.S. 238, to show for the rights of those pleading guilty precludes a finding of laches where the petitioner, although aware of the facts surrounding his plea, was unaware his rights had been violated.

tion. In the wake of this decision, our General Assembly enacted IC 35–4.1–1–3 (now codified, as amended, at IC 35–35–1–2), which requires that one pleading guilty must be advised not only of the rights specified in *Boykin* but also of other matters relevant to the decision to plead guilty.[5]

■ Since this statute was enacted, our supreme court has held in *German v. State, supra,* that trial courts must strictly comply with the statute by personally advising the defendant of his rights. Failure to inform the defendant of any of the enumerated rights violates fundamental due process and requires a finding that the plea was invalidly entered. *Austin v. State* (1984), Ind., 468 N.E.2d 1027; *see Jones v. State* (1984), Ind.App., 467 N.E.2d 757. Further, at least as to pleas entered after *German,* our supreme court has held that a trial court's failure to personally advise the defendant of these rights will render the defendant's guilty plea invalid even though the record as a whole clearly shows he understood his rights. *See Williams v. State* (1984), Ind., 468 N.E.2d 1036; *German v. State, supra.*

If anything is clear from these decisions, it is that our trial courts bear a heavy burden of seeing that those who wish to plead guilty are first informed of the consequences of doing so. The strict rules of *Boykin* and *German* are meant to ensure that one who, if he understood his rights, would plead not guilty does not plead guilty out of fear and ignorance. The Court in *Boykin* stated this concern as follows:

[A]s we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality.

395 U.S. at 242–43, 89 S.Ct. at 1712. By requiring the reversal of any guilty plea entered upon a silent record, the *Boykin* decision creates, in effect, a presumption that all persons who seek to plead guilty are ignorant of their rights and incapable of protecting their own interests without the trial court's help.

This presumption of incapacity seems entirely inconsistent with the view expressed in the concurring opinion that everyone who pleads guilty may be expected to protect his rights by looking into the validity of his guilty plea. We are similarly unconvinced that the suspension of a defendant's driver's license is sufficient to put him on notice that he should inquire into the validity of his guilty plea, as our second district recently held in *Perry v. State* (1986), Ind. App., 492 N.E.2d 57. Surely one who pleads guilty out of ignorance, incomprehension, or fear is similarly incapable of recognizing that he may be entitled to post-conviction relief. Denying post-conviction relief on the basis the concurrence suggests would harm those most in need of the protection of *German* and *Boykin.* The crucial question posed by *Boykin, German,* and their progeny is this: would the defendant have been satisfied with his plea if he had been aware of the rights he waived by doing so?

---

5. In its present form, this statute provides:

The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant: (1) understands the nature of the charge against him; (2) has been informed that by his plea he waives his rights to:
 (A) a public and speedy trial by jury;
 (B) confront and cross-examine the witnesses against him;
 (C) have compulsory process for obtaining witnesses in his favor; and
 (D) require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;
(3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences; and
(4) has been informed that if:
 (A) there is a plea agreement as defined by section 1 of this chapter; and
 (B) the court accepts the plea;
 the court is bound by the terms of the plea agreement.
IC 35–35–1–2(a).

In light of these decisions governing guilty plea hearings, we do not believe the trial courts in the instant cases were entitled to infer, based only on the fact that petitioners pled guilty, that they were on notice of their claim for post-conviction relief. Absent evidence they knew of specific facts from which each could reasonably have been aware that he might have a right to relief from his plea, the state has failed to prove its laches defense. Thus, petitioners cannot be denied relief on the basis of laches.

Nevertheless, we may affirm the trial court's judgment on other grounds, as we discussed in detail in our dissent in Ray's appeal prior to remand. *Ray v. State*, 466 N.E.2d at 1390–91. Ray asserts the trial court failed to fully advise him of the rights he was waiving by pleading guilty. As the original record of the guilty plea hearing had been destroyed, Ray sought to prove his case by reconstructing a record from his own recollection as provided in Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c). He submitted this record directly to the court for certification but failed to serve a copy on the state so that the state could prepare objections or amendments to it. Instead, he served the state with a request for admissions that the original record was unavailable and that Ray's reconstruction of the events at the hearing was true and accurate. The state denied that Ray's statement was accurate. The court never approved Ray's reconstructed record as an accurate account of the guilty plea hearing, and Ray did nothing to secure such a certification.

■ Ray did not claim the record was impossible to reconstruct, which would have entitled him to a new trial. *Zimmerman v. State* (1982), Ind., 436 N.E.2d 1087; *Gallagher v. State* (1980), 274 Ind. 235, 410 N.E.2d 1290. Instead, he attempted to reconstruct the record. He failed to comply with the requirements of A.R. 7.2(A)(3)(c) by serving a copy of this statement on the state. More importantly, Ray never sought to have this statement approved by the judge who heard his guilty plea. With such approval, Ray's statement would have become the indisputable account of what occurred at that hearing; without the judge's approval, Ray's statement was entitled to no more weight than his testimony. The testimony of Ray and his mother at the post-conviction hearing was vague and sometimes contradictory. On these facts, we cannot say the trial court erred in finding Ray failed to prove he was entitled to post-conviction relief.

For similar reasons, Wheeler, too, fails to demonstrate he is entitled to relief. He neglected to reconstruct the record as required by Appellate Rule 7.2(A)(3)(c); he also failed to prove such reconstruction was impossible. As the court in *Zimmerman* stated:

> In view of the heavy burden which a post conviction petitioner bears, and our standard of review in appeals therefrom ... a petitioner would be hard pressed to prove his claim, in the absence of a record. Without such record, a petitioner would have to rely upon witnesses, who memories or credibility may be subject to severe scrutiny by the trial judge and who testimony he is not required to believe.

436 N.E.2d at 1089. Since neither Ray nor Wheeler presented a reconstructed record for our review, we have only their affidavits and testimony to support their claims that they were not fully advised of the rights they were waiving by pleading guilty. In both cases, this evidence fails to prove by a preponderance of the evidence that the petitioners are entitled to relief.

Wheeler also claims two other bases for relief. First he contends that laches may not bar a claim based on the trial court's failure to advise a defendant of the constitutional right to counsel. He relies on *State v. Lindsey* (1952), 231 Ind. 126, 106 N.E.2d 230, which affirmed a writ of error *coram nobis*, holding that a violation of an accused's constitutional rights at trial voided the judgment against him and that the affirmative defense of laches does not apply to void judgments.

The P.C.R. 1 proceeding "comprehends and takes the place of all other common law, statutory, or other remedies" previously available to collaterally challenge convictions. P.C.R. 1, § 1(b); *cf. Bell v. State* (1985), Ind., 486 N.E.2d 1001 (P.C.R. 1 supersedes prior post-conviction remedies; thus P.C.R. 1 petition would be denied where grounds alleged in petition previously were alleged in *coram nobis* petition, the denial of which was never appealed). As the writ of error *coram nobis* was one predecessor remedy, Wheeler argues *Lindsey* is controlling here.

In *Lindsey* the *coram nobis* petitioner had pled guilty to murder in 1933, and applied for the writ in 1951, challenging the validity of the guilty plea. In affirming issuance of the writ our supreme court stated:

> [The State] contends that appellees failed to prove that they had used due diligence in asserting their remedy. Due diligence is a question of fact for the trial court. However, in the case at bar, appellees assert that certain of their constitutional rights had been violated. If this is true, and they did not waive their rights, the judgments were *void* from the time of the violation. *Bradley v. State (Taylor v. State )*, 1949, 227 Ind. 131, 84 N.E.2d 580; *Slack v. Grigsby*, 1951, 229 Ind. 335, 97 N.E.2d 145. In the last-cited case we said that where a judgment is void, *laches* does not operate to preclude the opening or vacating of a void judgment, for the reason that no amount of acquiescence can make it valid. Under our constitution, there can be no valid trial of a criminal case unless a defendant is defended by counsel, if he desires counsel. A judgment rendered where counsel has been denied is void.... (Citations omitted). This court has further held that when a void judgment is entered it can be attacked at any time, directly or collaterally, whenever the question is raised. (Citation omitted). The rule therefore is that due diligence is not a necessary fact to be proven when it is alleged and proved that the petitioner's constitutional rights have been violated.

> ... It was not necessary for appellees to prove that due diligence was used in filing their petitions. (Footnotes omitted).

*Lindsey*, 231 Ind. at 132–34, 106 N.E.2d at 232–33.

Despite our supreme court's decision in *Lindsey* that a violation of a defendant's constitutional rights renders his conviction void, in cases decided since the supreme court has recognized that laches may be invoked to bar a P.C.R. 1 petition based on an alleged violation of a defendant's constitutional rights. *See Twyman*, 459 N.E.2d 705; *Frazier*, 335 N.E.2d 623; *Langley v. State* (1971), 256 Ind. 199, 267 N.E.2d 538; and *accord, Morrison v. State* (1984), Ind. App., 466 N.E.2d 783, 785–87; *Perry v. State* (1986), Ind.App., 492 N.E.2d 57. These recent decisions have *not* held that contentions concerning the right to counsel are exempt from a laches defense. Although *Lindsey's* broad language could be read to foreclose the laches defense to advisement of right to counsel claims, a more narrow reading views the decision as supporting the general rule stated in *Frazier*, 335 N.E.2d 623, that mere passage of time, i.e., lack of due diligence, will not provide the basis for laches absent a showing of prejudice to the State. To the extent such a reading of *Lindsey* is not correct we conclude the decision has been limited by *Twyman, supra; Frazier, supra;* and *Langley; Richardson v. State* (1974) 162 Ind.App. 386, 319 N.E.2d 644.

In his P.C.R. 1 petition challenging the 1976 conviction, Wheeler also claimed he was entitled to relief because of newly-discovered evidence concerning the reliability of breathalyzer equipment used to test him. See P.C.R. 1, § 1(a)(4). The first question we must address is whether the post-conviction court's partial finding of laches properly disposed of this contention. We hold it did not.

 The *sine qua non* of laches is an unreasonable delay in asserting rights. In this case Wheeler presented an affidavit averring his counsel learned from articles

published nationally in October 1982 of defects in breathalyzer machines similar to those used in Lawrence County, and made by the same manufacturer. The petition for post-conviction relief was filed December 10, 1982, about two months later. Wheeler's affidavit was not controverted. As a result, there is *no* evidence in the record that Wheeler unreasonably delayed filing a petition after his counsel learned of this basis for post-conviction relief. The post-conviction court clearly erred in reaching the opposite conclusion.

Therefore, we next must determine whether the post-conviction court's general judgment denying relief may be affirmed on any other basis provided by the record. *See, St. Joseph's Hospital of South Bend v. Women's Pavilion* (1983), Ind.App., 451 N.E.2d 1126, 1129. Wheeler maintains the breathalyzer level taken when he was arrested, the precise reading from which is not in this record, provided the sole basis for his guilty plea, so he would not have pled guilty had he known of the defect claimed in the newspaper articles at the time of his guilty plea hearing. Thus, Wheeler claims the "evidence" in the articles of the breathalyzer defects justifies post-conviction relief.

■ In order to demonstrate newly-discovered evidence merits a new trial, the post-conviction petitioner must present an affidavit alleging facts which show:

1) the evidence has been discovered since trial;

2) the evidence is material and relevant;

3) the evidence is not cumulative;

4) it is not merely impeaching;

5) it is not privileged or incompetent;

6) due diligence was used to discover the evidence in time for trial;

7) the evidence is worthy of credit;

8) it can be produced upon retrial of the case; and

9) the evidence probably would produce a different result.

*Shaffer v. State* (1983), Ind.App., 453 N.E.2d 1182, 1185. The articles "discovered" by Wheeler's counsel fail several factors of this test.

■ We find no evidence in this record Wheeler or counsel who represented him in 1976 made *any* attempt to assess or attack the reliability of the breathalyzer equipment at that time, and we therefore conclude Wheeler has failed to establish he exercised due diligence to discover the evidence in time for trial. Had Wheeler considered attacking the credibility of the equipment and test in 1976 he would have had the opportunity to subpoena experts and undertake discovery, but we find no indication he did so. A showing of "due diligence" is not a prerequisite to filing a P.C.R. 1 petition, *Frazier, supra,* but is an integral factor in establishing entitlement to a new trial because of newly-discovered evidence.

■ Additionally, this "evidence" probably would not produce a different result at a new trial, but rather is merely impeaching. While the articles suggest similar breathalyzer equipment occasionally may be affected by surrounding radio traffic, nothing in this record correlates the information in the articles to the volume of radio traffic in Lawrence County, Indiana, or the likelihood of interference in a similar area. Thus, the trier of fact probably would view the evidence as generally impeaching, but not determinative.

Accordingly, we affirm the post-conviction court's general judgment denying relief because Wheeler did not establish entitlement to a new trial based on newly-discovered evidence.

The judgments are affirmed.

MILLER, J., concurs.

CONOVER, J., concurs with separate opinion.

CONOVER, Judge, concurring.

The majority affirms the trial court in each of these cases because both appellants failed to provide us with any record, recon-

structed[1] or otherwise. I concur in that result, but feel compelled to state my views as to the majority's holding a misdemeanant's presence in court when he is arraigned, pleads and is found guilty thereof but only a fine rather than imprisonment is imposed by the trial court as a penalty are facts insufficient, standing alone, to start the laches clock ticking. I do not agree with that proposition.

The majority correctly notes when the State files an affirmative defense of laches in a P.C.R. 1 proceeding, it bears the burden of proving that defense by a preponderance of the evidence. *Twyman v. State* (1984), Ind., 459 N.E.2d 705, 712. It must prove

(1) the petitioner had knowledge of existing conditions,

(2) he acquiesced in those conditions, and

(3) the State was prejudiced thereby.

*Gipson v. State* (1985), Ind., 486 N.E.2d 992, 993; *Frazier v. State* (1975), 263 Ind. 614, 335 N.E.2d 623, 624.[2]

In both cases here, the State established all three elements of the laches defense by a preponderance of the evidence to the court's satisfaction, and substantial evidence of probative value supports the trial courts' findings in each case, in my opinion.

As to the last element, prejudice to the State, in each case the evidence is undisputed the arresting officers have no present memory of the incidents involved, or the evidence needed to convict was not preserved and is no longer available. Thus, the State would have been denied the opportunity to re-prosecute these petitioners had the trial courts been reversed. Because it is the State's right and duty to prosecute legitimate drunken driving cases, the State was prejudiced in each case by the petitioners' unreasonable delay in filing their post-conviction proceedings.

Further, the petitioners were put upon inquiry under the facts proven. Each was personally present in court at all stages of the proceedings, arraignment, plea, sentencing, fine and revocation of their drivers' licenses. From these facts, the post-conviction courts could and did reasonably infer these defendants knew or should have known of their post-conviction rights and remedies, or at least the facts were sufficient to put them upon inquiry to determine their rights and remedies. *Perry v. State* (1986), Ind.App., 492 N.E.2d 57, 60. In *Perry*, our Second District found a conviction for reckless driving, driving under the influence, and driving with suspended license which resulted in loss of the defendant's driver's license was a sufficient change in the circumstances from which to infer both knowledge a reasonable inquiry would reveal defendant's post-conviction rights and remedies, and a person so positioned would make such inquiry, albeit there was some evidence of defendant's impaired mental capacity. The court there held, per Shields, J., failure to make such inquiry under those circumstances constituted knowing acquiescence in the circumstances of conviction and punishment. No prison sentence was imposed. *Accord: Badelle v. State* (1986), Ind.App., 487 N.E.2d 844, 845, (eleven year delay in bringing post-conviction relief proceeding warrants inference defendant was put on inquiry, facts included 360 day prison sentence); *Morrison v. State* (1984), Ind.App., 466 N.E.2d 783 (burglary conviction and incarceration put defendant on inquiry as to means of relief or appeal, thus inference of unreasonable delay proper); *Harrington v. State* (1984), Ind.App., 466 N.E.2d 1379 (conviction for exerting unauthorized control over vehicle and one year sentence with other circumstances sufficient to imply unreasonable delay). Thus, all three elements of the laches defense were established by substantial evidence at the hearings below in each case. The majority's holding the facts do not support that conclusion as to the first and second elements of the laches defense is clear error, in my

---

1. Per Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c)

2. *Gipson, Twyman,* and *Frazier* are all cases where lapse of time was shown by the State but nothing more.

opinion, and creates a conflict on that subject with our Second District.

I would affirm each trial court in all things.