**Earl RHYMER, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

No. 02A03–9204–PC–106.

Court of Appeals of Indiana,
Third District.

Jan. 20, 1994.

Rehearing Denied April 15, 1994.

Richard J. Thonert, Romero & Thonert, Auburn, Richard Kammen, McClure &

McClure & Kammen, Indianapolis, for appellant-defendant below.

Linley E. Pearson, Atty. Gen. of Indiana, Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff below.

STATON, Judge.

Earl Rhymer appeals the denial of his petition for post-conviction relief. He raises five issues for our review, which we consolidate into four and restate as follows:

I. Whether Rhymer should be granted post-conviction relief based on newly-discovered evidence.

II. Whether the post-conviction court denied Rhymer due process and a fair hearing.

III. Whether the post-conviction court failed to issue sufficient findings of fact and conclusions of law.

IV. Whether Rhymer was denied the effective assistance of trial and appellate counsel.

We reverse and remand.

Rhymer was convicted by a jury of the murder of his live-in girlfriend, Jacqueline Dunn, a class A felony.[1] He was sentenced to forty years imprisonment. The conviction was affirmed by this court by memorandum decision in February 1990. In June 1990, Rhymer filed a petition for post-conviction relief. Following a hearing, Rhymer's petition was denied by the post-conviction court. Rhymer asserts in part that he was entitled to post-conviction relief on the basis of newly-discovered evidence. Because we agree, we do not reach his other allegations.

The evidence produced at trial revealed that between 10:30 and 11:00 a.m. on February 5, 1987, Rhymer and his daughter, Tina, left their home to run a few errands in a nearby town. Upon their return at approximately 12:30 p.m., Rhymer went upstairs and discovered Dunn dead. The evidence tending to establish Rhymer's guilt consisted of the following: (1) Dunn was found face down in the bed she shared with Rhymer; (2) Rhymer possessed a gun of the type that

could have been used to kill Dunn; (3) bullets of the proper caliber were found in Rhymer's bathroom; (4) Rhymer was depressed because Dunn had affairs with other men and was going to move out; (5) Shawn Yoquelet, a friend of Rhymer's son, testified to finding a gun hidden in Rhymer's house; and (6) Yoquelet testified that Rhymer saw Yoquelet with the gun, admitted to killing Dunn and threatened to kill Yoquelet if Yoquelet told anyone. *Rhymer v. State* (1990), Ind.App., 550 N.E.2d 849. It was the State's theory that Rhymer shot Dunn before leaving the house to run the errands.

During the post-conviction hearing, the court disallowed most of the testimony of three witnesses, Richard Salway, Ryan Bleke and Kathleen Monier, on grounds that it did not constitute newly-discovered evidence because the witnesses were aware of the information about which they were going to testify before Rhymer's conviction. Rhymer's offers to prove revealed that Salway would have testified that he was at Rhymer's home shortly before noon on February 5, 1987 and that he saw Dunn on the porch talking with Shawn Yoquelet and William Moffitt at that time. Salway had not come forward earlier because he had received two telephone calls in which he was told he would be killed if he testified as to what he saw.

Another offer to prove showed that Bleke would have testified that he also saw Shawn Yoquelet outside Rhymer's home around 11:00 or 11:30 on the morning of the murder. Finally, Monier would have testified that when she drove by Rhymer's house on the morning of February 5, 1987, she observed Bill Moffitt running away from the house carrying what may have been a gun. She had not come forward before trial because she feared retaliation from Moffitt, who had beaten and raped her in the past.

■ Granting a new trial on the grounds of newly-discovered evidence is within the sound discretion of the trial court. The denial of a motion will be reversed only if the trial court abused its discretion. *Smith v. State* (1983), Ind., 455 N.E.2d 346. In order to demonstrate that newly-discovered evi-

---

1. IND.CODE 35–42–1–1 (Supp.1992).

dence merits a new trial, the post-conviction petitioner must establish each of the following by a preponderance of the evidence: (1) that the evidence has been discovered since the trial;[2] (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Ray v. State* (1986), Ind.App., 496 N.E.2d 93, 101. Of particular relevance here is whether the evidence is cumulative, whether it could have been discovered with due diligence in time for trial, and whether it will probably produce a different result upon retrial.

■ Although Rhymer maintained throughout the trial that someone else committed the murder, no evidence was presented that placed other people at Rhymer's home on the morning of the murder. Further, there was no evidence presented at trial showing that Dunn was still alive when Rhymer and Tina left to go into town. Thus, the proffered evidence was not merely cumulative.

Rhymer must also show that due diligence was used to discover the evidence in time for trial. The record reveals the evidence was not discovered before trial because the witnesses feared they would be harmed if they testified. Due diligence does not require interviewing everyone in town in hopes of finding someone who happened to be in the vicinity of Rhymer's house on the morning of February 5, 1987 and who may have seen someone else there. *See Fox v. State* (1991), Ind., 568 N.E.2d 1006, 1008 (due diligence would not require a multi-county search for eyewitnesses to the incident).

Finally, the newly-discovered evidence must be such that it will probably produce a different result. A sufficient probability of a different result upon retrial is present where the omitted evidence would create a reasonable doubt that did not otherwise exist. *Id.* Given that the most damaging evidence against Rhymer was the testimony of Yoquelet, evidence revealing that Yoquelet was at Rhymer's home at approximately the time of the murder would cast serious doubt on Yoquelet's credibility. Moreover, evidence that Dunn was still alive when Rhymer left for town clearly would contradict the State's theory that Rhymer killed Dunn before he left. Finally, testimony that a third person was seen running away from the house with a gun at approximately the time of the shooting would support Rhymer's claim that he was not responsible. We conclude it is sufficiently probable that a reasonable doubt would be created by this newly-discovered evidence on retrial.

The judgment of the post-conviction court is reversed, and this cause is remanded for a new trial.

ROBERTSON, J., concurs.

GARRARD, J., dissents and files separate opinion.

GARRARD, Judge, dissenting.

I respectfully dissent. While the majority has carefully analyzed the potential effect of witnesses Salway, Bleke and Monier to conclude that Rhymer should be granted a new trial, all that information is based upon an offer of proof made by counsel. No one has yet testified to those "facts." Nor have those facts been tested in the crucible of cross examination. In sum, it appears to me that there is presently no basis for concluding that the testimony if given would likely produce a different result on retrial. At most the case should be remanded to the post conviction court for rehearing so that the actual testimony of the witnesses might be considered.

---

2. Contrary to the post-conviction court's conclusion, the evidence must have been discovered since the trial *by the defense*, rather than by the particular witness. *See, e.g., Francis v. State* (1989), Ind., 544 N.E.2d 1385, *reh. denied* (new trial granted on the basis of newly discovered evidence where witnesses came forward after trial and stated that they saw the alleged victim of the incest in a parking lot near the witnesses' workplace at the same time that the crime was allegedly taking place at the victim's home).