**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 19 2012, 8:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN PINNOW**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOMINIQUE GUYTON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1107-PC-724 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-9804-PC-67208

**January 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Petitioner Dominique Guyton appeals the denial of his petition for post-conviction relief ("PCR"). Concluding that Guyton's PCR petition is barred by the doctrine of laches, we affirm.

**FACTS AND PROCEDURAL HISTORY**

The Indiana Supreme Court's opinion in Guyton's direct appeal, which was handed down on July 25, 2002, instructs us as to the underlying facts leading to this post-conviction appeal:

> On April 23, 1998, Indianapolis police officers found the body of Pax Larrimore lying in the street in the 4300 block of Norwaldo Avenue. He had died from two gunshot wounds to the chest and abdomen. As the investigation unfolded, Guyton became a suspect. Guyton and Larrimore had had several encounters in which Larrimore had shot at Guyton from a car. On April 28, police interviewed Guyton. He admitted to running into Larrimore on the day of the murder and claimed that Larrimore had approached his car on foot and put his hand in his pocket. Guyton, thinking Larrimore was about to pull out a gun, drove away. Guyton denied shooting Larrimore.
>
> Guyton was charged with murder, two counts of attempted murder, and carrying a handgun without a license. At trial, Guyton had a different account. He claimed that on the day of the shooting he went to visit friends at 43rd and Norwaldo. After talking with his friends for awhile, he left when a group of men, including Larrimore, Anthony Butts, Tonio Walker, and Damon Jackson, approached. Guyton next visited Sherry Akers and made plans for later that evening. According to Guyton, after he left Akers, he was driving down Norwaldo when he saw Larrimore flagging him down. When Guyton saw Larrimore's hand on the grip of a gun, he panicked, grabbed his own gun, and fired three or four times.
>
> Butts testified to a third version. According to Butts, Guyton drove up to the group, held his hand out of his car, and fired four shots, one at each of Larrimore, Butts, Walker, and Jackson. He then fired a final shot at Larrimore before driving off. Butts identified Guyton as the shooter from a photo array. According to Jackson, Larrimore did not have a gun that day.
>
> The jury found Guyton guilty of murdering Larrimore, attempting to murder Jackson, and carrying a handgun without a license. He was sentenced to fifty-five years for murder, thirty years for attempted murder, and one year for the handgun violation, all to be served concurrently.

2

*Guyton v. State*, 771 N.E.2d 1141, 1142 (Ind. 2002).

In Guyton's direct appeal, the Indiana Supreme Court affirmed Guyton's convictions for murder and carrying a handgun without a license. *Id*. at 1145. In affirming these convictions, the Supreme Court held that Guyton's convictions did not violate double jeopardy and that there was no substantial evidence of juror bias. *Id*. at 1142-1145. The Supreme Court, however, reversed Guyton's conviction for attempted murder, finding that the jury had been improperly instructed. *Id*. at 1144.

On December 29, 2009, Guyton filed a *pro se* PCR petition. On January 28, 2010, the State asserted the defense of laches in its answer to Guyton's PCR petition. The post-conviction court conducted an evidentiary hearing on Guyton's PCR petition on September 17, 2010, which was concluded, after a continuance, on January 20, 2011. During the evidentiary hearing, Guyton, by counsel, presented argument in support of his PCR petition. On July 12, 2011, the post-conviction court issued an order denying Guyton's request for PCR. Guyton now appeals.

## DISCUSSION AND DECISION

Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard

3

of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Collier v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

Guyton contends that the post-conviction court erred in determining that his PCR petition was barred by the doctrine of laches. The doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. *Kirby v. State*, 822 N.E.2d 1097, 1100 (Ind. Ct. App. 2005) (citing *Armstrong v. State*, 747 N.E.2d 1119, 1120 (Ind. 2001)). "It is an implied waiver resulting from knowing

acquiescence in the conditions and a neglect for an unreasonable length of time to assert a right, resulting in prejudice to the opposing party." *Harrington v. State*, 466 N.E.2d 1379, 1381 (Ind. Ct. App. 1984) (citing *Twyman v. State*, 459 N.E.2d 705 (Ind. 1984)).

The question of laches is to be determined from a consideration of the facts and circumstances in each case. *Id.* Mere lapse of time, although a factor, is not enough to constitute laches. *Id.* As such, to prevail on a claim of laches, the State has the burden of proving, by a preponderance of the evidence, that Guyton unreasonably delayed in seeking relief and that the State has been prejudiced by the delay. *Kirby*, 822 N.E.2d at 1100 (citing *Williams v. State*, 716 N.E.2d 897, 901 (Ind. 1999)).

> A petitioner can seldom be found to have unreasonably delayed unless he or she has knowledge of a defect in the conviction. *McCollum v. State*, 671 N.E.2d 168, 170 (Ind. Ct. App. 1996), *clarified on reh'g*, 676 N.E.2d 356 (Ind. Ct. App. 1997), *trans. denied*. A finding of knowledge and acquiescence is therefore implicit in a finding of unreasonable delay. *Id.* "Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which the fact finder may infer knowledge." *Perry v. State*, 512 N.E.2d 841, 845 (Ind. 1987), *reh'g denied*.
>
> In addition, for post-conviction laches purposes, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution. *Armstrong*, 747 N.E.2d at 1120. "The inability to reconstruct a case against a petitioner is demonstrated by unavailable evidence such as destroyed records, deceased witnesses, or witnesses who have no independent recollection of the event." *Taylor v. State*, 492 N.E.2d 1091, 1093 (Ind. Ct. App. 1986). The State has an obligation to use due diligence in its investigation of the availability of evidence and witnesses. *McCollum*, 671 N.E.2d at 172 (quotations omitted).

*Kirby*, 822 N.E.2d at 1100.

Upon appeal, our review is limited to whether or not the evidence is sufficient to

establish the State's defense of laches. *Harrington*, 466 N.E.2d at 1381.

> In determining this issue, like any other sufficiency question, we will not reweigh the evidence or determine credibility of witnesses, instead we look only to that evidence most favorable to the judgment, together with all reasonable inferences flowing therefrom. If, from that viewpoint, there is evidence of probative value which supports the trial court's judgment, we will affirm that judgment. *Springer v. State*, (1984) Ind., 463 N.E.2d 243; *Mack v. State*, (1983) Ind., 457 N.E.2d 200; *Henson v. State*, (1979) 271 Ind. 325, 392 N.E.2d 478.

*Id*.

In the instant matter, Guyton maintains that the State failed to prove unreasonable delay or resulting prejudice. With respect to a showing of unreasonable delay, the record reveals that approximately ten years after Guyton was convicted of murder and carrying a handgun without a license, and nearly seven and one-half years after his direct appeal was resolved by the Indiana Supreme Court, Guyton filed his PCR petition, alleging that he received ineffective assistance of trial counsel. The trial record, which was admitted into the post-conviction record, demonstrates that Guyton had repeated contacts with the criminal justice system prior to being charged with the underlying offenses. The pre-sentence investigation report ("PSI") considered by the trial court at sentencing in the underlying matter indicates that Guyton's prior criminal record consisted of two true juvenile findings, a prior conviction, and eight prior instances where Guyton had contact with the criminal justice system but where charges were, for a variety of reasons, either not filed or dismissed. The PSI also indicates that additional criminal charges were pending at the time when the PSI was prepared and Guyton was sentenced in the underlying matter. The trial record further

6

demonstrates that Guyton had contact with at least three separate attorneys since being charged with the underlying criminal charges. In addition, Guyton has been incarcerated in the Department of Correction since being convicted of the underlying criminal charges.

In light of Guyton's repeated contacts with the criminal justice system, his access to multiple attorneys, and his lengthy incarceration, we conclude that the trial court could have reasonably inferred that Guyton enjoyed access to both legal representation and a law library and, thus, could have inquired or learned about post-conviction remedies. *See Kirby*, 822 N.E.2d at 1101 (providing that the post-conviction court could have reasonably inferred that the petitioner, who had had repeated contacts with the criminal justice system and had been incarcerated, would have enjoyed access to a law library where he could have learned about post-conviction remedies). Guyton's seven-and-one-half-year delay in filing his PCR petition after his direct appeal was resolved, coupled with his presumed knowledge of the criminal justice system, is sufficient for the post-conviction court to infer that the delay in filing the instant petition for post-conviction relief was unreasonable. *See id.*; *see also, Harrington*, 466 N.E.2d at 1381-82 (providing that a petitioner's seven-and-one-half-year delay in filing a petition for post-conviction relief was unreasonable when the petitioner was "not without experience with the criminal justice system").

Turning to the prejudice prong of the laches analysis, the record demonstrates that the State was unable to locate three eyewitnesses who testified at Guyton's trial and was unaware of their present addresses. The State researched multiple databases in an attempt to find a current address for each of the eyewitnesses and sent letters to multiple addresses found for

7

each eyewitness, but did not receive any responses. Furthermore, Detective Janice Aikman of the Indianapolis Metropolitan Police Department, who (1) was the first officer to arrive on the scene less than two minutes after being dispatched; (2) secured the scene; and (3) provided important testimony at trial about the condition of the victim and the witnesses, items found at the scene, and statements made by the witnesses, did not have any independent recollection of the facts relating to the underlying criminal charges. We conclude that this evidence of faded memories and missing witnesses is sufficient to show that, because of Guyton's lengthy delay in filing his petition for post-conviction relief, the State would be unable to reconstruct its case against Guyton and has, thus, suffered prejudice.[1] *See Harrington*, 466 N.E.2d at 1381-82 (providing that the evidence was sufficient to prove that the State was prejudiced by the petitioner's delay when the State demonstrated that the petitioner's accomplice was unavailable to testify at retrial, some of the evidence was missing, and the investigating officer no longer had any independent recollection of the case); *Kirby*, 822 N.E.2d at 1101 (providing that the evidence was sufficient to prove that the State was prejudiced by the petitioner's delay when the State demonstrated that some of the evidence used at trial had been destroyed and that the State was unable to locate all of the victims of the petitioner's offenses); *McCollum*, 671 N.E.2d at 172 (providing that evidence of faded memories and missing witnesses was sufficient to show that the State was

---

[1] To the extent that Guyton argues that the State was not prejudiced because the witnesses' prior testimony would be admissible at retrial, we disagree and note, as this court has previously held and Guyton acknowledges, the use of a transcript of prior testimony is not nearly as effective as the original live witnesses and materially diminishes the State's ability to present a case. *See McCollum*, 671 N.E.2d at 172.

8

prejudiced by petitioner's twelve-year delay).

Having concluded that the post-conviction court did not err in concluding that Guyton's PCR petition is barred by laches, we need not review the effectiveness of the representation provided by Guyton's trial counsel.

The judgment of the post-conviction court is affirmed.

KIRSCH, J., and BARNES, J., concur.